UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

THOMAS KRAEMER

plaintiff,

-against-

Florance Edelstein,  et al;

------------------------------------------------------------x

**17CV 2910**

RECEIVED
SDNY DOCKET UNIT
2017 APR 21  AM 10: 03

Motion for New Trial of cases
14-cv-3804, 14-cv-9343, 14-2221, 15-cv-1755
and 16-429.

JURY TRIAL

I declare under penalty of perjury that the foregoing is true and correct.

Signed: Date: 04/03/2017

Thomas Kraemer
Pro Se Plaintiff
145 West 71 Street Apartment 8G
New York, NY 10023
T: 212.420.0100
E:kraemer.tom@gmail.com

**This hard copy complaint should primarly be viewed at:**

**http://live-documentation-esemplastic.pantheonsite.io/node/123**

It contains hyperlinks to all supporting exhibits largely prima facie documentation that go to
proving the allegations and cause for a new trial.

**2nd Cir. Local Rules R. 25.1(i) (i) Hyperlinks.** A document filed under this rule may contain
hyperlinks to (i) other portions of the same document or to other documents filed on appeal; (ii)
documents filed in the lower court or agency from which the record on appeal is generated; and
(iii) statutes, rules, regulations, and opinions. A hyperlink to a cited authority does not replace
standard citation format.

STATEMENT OF JURISDICTION AND VENUE

1. Specifically, the plaintiff's claims against the defendants arise under violations of 42 U.S.C. § 1985 (2) (3) in connection with 18 U.S.C. § 1503, 18 U.S.C. § 1512, 18 U.S.C. § 1592, 18 U.S.C. § 1591, 18 U.S.C. § 1959.

2. Jurisdiction is proper in the United States District Court for the Southern District of New York under 28 U.S.C. § 1331, federal question jurisdiction.  Controversy is between entities and individuals of the State of New York and Commonwealth of Pennsylvania. The amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

3. Jurisdiction is also proper in the United States District Court for the Southern District of New York under federal question jurisdiction, as the plaintiff's claims against the PA defendants arise under the Constitution of the United States and several federal laws were violated here via their [in colaberation with New York defendants] tampering of the United States District Court for the Southern District of New York, and United States Court of Appeals for the Second Circuit.

**4. This hard copy complaint should primarly be viewed at:**
**http://live-documentation-esemplastic.pantheonsite.io/node/123**
It contains hyperlinks to all supporting exhibits largely prima facie documentation that go to proving the allegations and cause for a new trial.

**2nd Cir. Local Rule 25.1(i) Hyperlinks**. A document filed under this rule may contain hyperlinks to (i) other portions of the same document or to other documents filed on appeal; (ii) documents filed in the lower court or agency from which the record on appeal is generated; and (iii) statutes, rules, regulations, and opinions. A hyperlink to a cited authority does not replace standard citation format.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Table of Contents**

I  INTRODUCTION

FINDINGS OF FACT

II. HISTORY OF TRAFFICKING LEADING TO ATTEMPTED MURDER  2013,
TAMPERING IN NY 2014

A. 2000: My daughter began manifesting signs of sexual abuse—wetting herself during
elementary school hours. According to the school nurse she's never done this before. (See also A.
Tampering 14-cv-3804 SDNY | Exhibit L)

B. 2005: I sued the Easton Area School District for segregation, violations of FAPE, LRE

C. 2006: Emilie's Grandfather Attorney Raymond DeRaymond and his former partner Judge
Edward Smith knowingly trafficked my daughter using false claim MR317 | 18 U.S.C. § 1592

D. 2008: Grandfather Attorney Raymond DeRaymond highly likely responsible for Emilie's
torture

E. 2011: 10-cv-4868 Judge Martini allowed violations of 42 U.S.C. § 1985 (2) (3) and 18 U.S.C.
§ 1512

F. 2012: Pronounced Spike In Violence To My Daughter After Lisa Spitale's Guardianship
Confirmed

G. 2012: Trafficking: Remote Parking lots, Private Residences, Fights in parking lots, STD,
Police protection of traffickers.

H. 2012: July-August: Torture (burned numerous times) resulting from 03/23/2012 petition
approved by Judge Edward Smith submitted by guardian Lisa Spitale. Police protection confirms
torture court ordered.

I. 2013: May-August: My daughter's Attempted Murder: Norwegian Scabies:

(i) 2013: Impossible cure—proof of intent to murder
(ii) Paired dosages of increasing potency—topical corticosteroids —facilitating the diseases progression.
(iii) Undocumented pharmaceuticals obtained by Amy DeRaymond facilitating attempted murder

J. 2013: May-February: Plaintiff's Attempted Murder: Toxic Fumes 8G1. Facilitated by NYPD (2013-2014)

K. 2014: January: Assault | Apparent rape | Tool Burn—Finger print bruises | Emilie Hospitalized after telling me Dr. Hernandez called police "a little bit"

L. 2014: Fraud | Caused Mental Impairment via Overdose As Basis For Interstate Support Application

COMPLAINT | BASIS FOR NEW TRIAL

III. 2014: TAMPERING WITH FEDERAL WITTNESS TESTIMONY VIA OVERDOSE VIOLATION 18 U.S.C. § 1512 | 14-cv-3804 SDNY | 14-2221 2nd. Cir.

**03/26/2014: Judge Edward Smith voted in as federal judge**
**03/27/2014: Emilie overdosed with 60 tablets of Risperidone**

Table 1. Impairing Daughter's Testimony via Overdose in New York State and Federal venues
Table 2. Ratio of Convulsant Risperidone—To—Anti-Convulsant Lamotrigine

IV. 2014: TAMPERING WITH FEDERAL COURT DOCUMENTS
VIOLATION 18 U.S.C. § 1503 | 14-cv-3804 SDNY | 14-2221 2nd. Cir.

A. Tampering  Exhibit L | 14-cv-3804 SDNY
B. Tampering  document 5. | Motion To Dismiss | 14-cv-3804 SDNY
C. Tampering  document 8. | MTR | Insertion of extra document.

V. 2014: KIDNAPPING | EXTORTION | DURING US APPEAL FOR THE SECOND CIRCUIT
VIOLATION 18 U.S.C. § 1201 | 14-2221
(i) Northampton County Police protected the kidnapper's overt act

(ii) kidnapper's overdosed my daughter until she convulsed permanently impairing her mentally
(iii) My daughter's violently imposed impairment prevented her testimony against police, kidnappers
(iv) Northampton County police, Amy DeRaymond, Lisa Spitale move to flip their violations of 18 U.S.C. § 1201 and  18 U.S.C. § 1951 /1952 though invention of 11/04/2014 PFA statement.

## VI. 2014: TAMPERING WITH JURISDICTION

## VII. 2014: CONCEALMENT OF A PUBLIC HEALTH HAZARD | 14-cv-9343 SDNY

## VIII. 2015: TAMPERING WITH  15-cv-1755

## IX.  2015: FEDERAL QUESTION 16-429 | TAMPERING WITH OFFICE OF COURT ADMIN NWYK HOUSING COURT INFORMATION SYSTEM HISTORY OF PROCEEDINGS AND MAIL FRAUD

A. 145 W 71 St. Apt 8G1 Ny Ny 10023 | 8G1 | Trafficking a rent stabilized tenant | 18 U.S. Code § 1592

B. False Claim 79433-14 / Non-Pay Dwelling #27965: Tampering With Office Of Court Admin | Mail Fraud

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

INTRODUCTION

5. Due to the availability of new evidence and need to correct a clear error or prevent manifest injustice this motion is presented. (Virgin Atl. Airways, Ltd. v. National Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992)

6. Violence began after I put my daughter's name on my rent stablized apartment lease 2011. Having my daughter Emilie live in New York (1) created problems for my landlord who illegally tripled charged rent since 1997 (1) (2) owing the unsuspecting tenant (myself) more than $900,000 in rent overcharges—that highly likely would have been discovered when Emilie moved and (2) for criminals in Pennsylvania who trafficked (1) my daughter through false claim mental retardation 317 and used organized violence (1) (2) (3) (4) (5) as a means of coercion to prevent her integration into society.

7. The violence (1) and resulting injuries was the cause for my bringing federal housing lawsuit 14-cv-3804 and appeal 14-2221 where my daughter was a party in the SDNY starting 2014.

8. Tampering of federal law clerks took place for federal lawsuits where my daughter was involved: 14-cv-3804, 14-cv-9343, 14-2221 2nd. Cir., 15-cv-1755 and 16-429 2nd. Cir. in violation of 18 U.S.C. § 1503, 18 U.S.C. § 1512, and 18 U.S.C. § 1959.

9. Tampering took place for 14-cv-3804, 14-cv-9343, 14-2221 2nd. Cir., 15-cv-1755 and 16-429 2nd. Cir. in violation of 18 U.S.C. § 1503, 18 U.S.C. § 1512, and 18 U.S.C. § 1959.

That is, parties from Pennsylvania were particularly keen on: collaborating with my landlord in New York to murder/harm/impair me in my apartment, disrupt Emilie's testimony in federal court, corrupt evidence submitted to federal court, tampering with federal court documentation, engage in violence to my daughter including attempted murder. The racketeering around 8G1, 14-cv-3804, 14-2221, 14-cv-9343, 15-cv-1755 quelled exposure outside of the EDPA where the implementation of Emilie's trafficking can be traced to the Northampton County Court of Common Pleas and to a federal magistrates office in Philadelphia.

"**Section 1985** (2) grants prospective witnesses a substantive federal right to be free of conspiracies to deter or retaliate against them for their attendance at federal court proceedings. That principle has particular force here, because Congress enacted Section 1985 based on a belief that state authorities were unwilling or unable to preserve civil order in the South during the Reconstruction". *Haddle v. Garrison* Docket number: No. 97-1472.

10. **2000: First known instance18 U.S.C. § 1591**.  Trafficking of my daughter Emilie, started the last year of her elementary school education. Enuresis during school hours resulted. (a manifestation of sexual assault). The school district made the guidance counselor erase her notes on the matter. The County canceled her children and youth investigation.

11. The mother Amy DeRayomond agreed to help the Easton Area school District to not report my daughter's injuries to me and only report them to Amy DeRaymond while Emilie was at the Easton School District—facilitating their trafficking of my daughter. Amy DeRaymond an employee of the district, falsely stated Emilie suffered no traumas during healthcare interviews. 2014: Federal law clerks for the SDNY were corruptly persuaded to tamper with 14-cv-3804 Exhibit L. Exhibit L was the only exhibit out of 40 that referred to the school district's responsibility of my daughter enuresis during school hours. Attorney Ed Smith (now Judge Ed Smith) and attorney Ray DeRaymond were Amy DeRaymond's attorneys at the time Emilie's enuresis during school hours began (2000).  (See 10-cv-4868).

12. **12/21/2006: First known instance 18 U.S.C. § 1592.**  The Northampton County Court of Common Pleas unlawful conduct with respect to documents in furtherance of trafficking, peonage, slavery, involuntary servitude, or forced labor.  Violation of 18 U.S.C. § 1592 can be traced to 12/21/2006 Northampton County Judge Ed Smith and his former partner attorney DeRaymond knowingly immured my daughter to Northampton County via incapacitation by foisting upon her a fraudulent mental retardation claim (MR317) they both knew to be false.

13. **03/23/2012: First known instance of court-sponsored 18 U.S.C. § 1959** organized by Lisa Spitale, Amy DeRaymond, Lehigh Transition Service and Northampton County PA Judge Ed Smith. Lisa Spitale filed a petition to remove two of my vacation weeks with my daughter stressing that they needed to be used instead for more time with Lehigh Transition Services. During the time the court carved out for Lehigh Transition Services (07/16/2012 to 08/06/2012) to provide Emilie with an education she was instead taken 45 miles west of Lehigh's offices—halfway to Harrisburg—sadistically tortured and burned with cigarettes at a private residence. Emilie was never the same afterward. Her friend "Joe" observed her torture and told Emilie to "be tough" Joe told my daughter to tell me he was "a judge and had subpoena power" jargon my daughter was completely unfamiliar with.

14. My federal lawsuits were ushered through the federal court system circumventing standard protocol resulting in tampered documents, exhibits and orders that show no evidence of a justice having ever read them for cases 14-cv-3804, 14-cv-9343, and 15-cv-1755.

15. The legal/law enforcement culture in PA that allowed for the events as indicated in my lawsuits 14-cv-3804, 14-cv-9343, 15-cv-1755 is consistent with the culture that would tamper with my federal lawsuits to hide their responsibility for the trafficking of my daughter that first started in public school. For example, there is nowhere that I can find a New York judge ever taking cash to put 5,000 children in jail. Nor can it be found that public luminaries can wander into a public school in Manhattan and walk out with your child for almost daily trips in a car somewhere without the parent's knowledge. These things occurred in Pennsylvania in connection with public school an environment so ripe for it the egregious events lasted for years:

A. Jerry Sandusky: was busy for 15 years before getting "caught":
PA administrators and the coach from Central Mountain high that allowed Sandusky to pluck victim one from school and rape him for two years were rewarded with praise by AG Linda Kelly and a promotion. Football Coach Turchetta that facilitated Sandusky's relationships, mediating for him—repeatedly harangued victim one in school after he reported Sandusky for raping him was promoted as principal of Central Mountain High School (6.12.2014). The principal whom Turchetta will replace at Central Mountain, Karen Probst, was criticized for her role in the scandal.

- Mother One: "coach Turchetta found ways to target her son as punishment for getting Sandusky removed from school grounds";
- Mother One: on principle and administrative staff: "I repeated the line three times. I said let's call the police. Right now. Let's do it. And they continued to stare at me.";

- PA AG Linda Kelly: 11/07/2011: "Pennsylvania State Attorney General Linda Kelly praised Central Mountain High School for "doing the right thing" in the Sandusky matter. The indictment states that the school immediately called the police when it was informed of the abuse."

- Coach Turchetta: "Turchetta said he witnessed shouting matches between Sandusky and some of The Second Mile students because Sandusky wanted more time than the teenagers were willing to give." "Often, Turchetta said, he ended up being the mediator." "He also testified that

he helped Sandusky find and reach students who Sandusky had unsuccessfully been trying to call in the evenings."

- That's for law enforcement, director Wayne Koch said. Keystone Central School District officials have stood by Turchetta through the past five years, even though several board members conceded to PennLive Thursday that they've still never directly asked Turchetta about the scandal.

**B.** Judge Ciavarella ("kids for cash") was in business for 7 years:
Juvenile proceedings are kept closed to the public to protect the privacy of children: "But they are kept open to probation officers, district attorneys, and public defenders, all of whom are sworn to protect the interests of children." "It's pretty clear those people didn't do their jobs." Clay Yeager, the former director of the Office of Juvenile Justice in Pennsylvania.

The Pennsylvania Supreme Court removed Mark Ciavarella and Michael T. Conahan from their duties after federal prosecutors filed charges Jan. 26, 2009. State Supreme Court then attempted to destroy the records of thousands of juveniles who appeared before a corrupt county judge from 2003 to 2008 and were stopped.

PA law enforcement is integral for facilitating these relationships. I am not stating law enforcement was incompetent I am stating they are involved in maintaining a personal trafficking operation out of the Easton Area public school in Pennsylvania. And my ability to detail my daughter's case resulted in the tampering of my federal lawsuits in the SDNY and the U.S. Court of Appeals for the Second Circuit.

**C.** Suffolk County, NY — James Burke, formerly the Chief of one of the largest police departments in the country. Recently Captain Burke of Suffolk county was convicted to 4 years in prison for beating an individual who stole "a duffel bag of sex toys and porn tapes" from the trunk of his car.

Federal Judge Wexler said that Mr. Burke had "corrupted a system," and that his crimes were not limited to a single episode.
"Investigators determined that Burke had engaged in sex acts with the prostitute in his patrol car, and on one occasion left her alone in the vehicle with his gun and service weapon, according to Pix11 News" There continue to be media reports connecting Burke to a burial ground of prostitutes at Gilgo Beach.

Law enforcement's connection to this industry (often fueled by trafficking)  in connection to the inaction at my apartment 8G1 when my landlord Florence Edelstein repeatedly vented toxic fumes (1) (2) and vented insects (3) (4) (5) (6) (7) (8) (9) (10) into my apartment is worrisome. NYPD/20 identified this as assault and likely attempted murder. They did not investigate. 06/17/2016 The US Attorney for the Southern District of New York charged 2 police commanders (16-CRIM-468 U.S. v. Grant / Harrington) for taking kickbacks from real estate brokers (Reichberg and Rechnitz) who claimed to represent the (Jewish) "community".

**D.** PA AG Linda Kelly | 10-cv-4868 Doc.138: I am arguing with the PA State's attorney general about the State's Special Education Appellate Panel Opinion #1727 regarding my daughter's federally protected pendant placement diagnosis PDD-NOS. The commonwealth cut a $255,000 check for the ordered pendent placement diagnosis PDD-NOS after the state due process hearing officer #5779 05/06 gave the PDD-NOS diagnosis due and considered evaluation—weighing it against the district's claim that Emilie was mentally retarded. I presented to Federal Judge Martini and AG Linda Kelly a clear case of fraud, violation of my daughter's constitutional right to freedom and numerous unexplained burn injures—exhibits—the attorney general saw and Northampton county judges brushed off. Her reaction/motion was bizarre but consistent with her praise of Central Mountain High school officials egregious facilitation Jerry Sandusky's predatory habits.  The office of the PA AG endorsed the tools of predatory trafficking by protecting the Mountain High school District principal, administrative staff, and football coach. That same attitude prevailed from the PA AG Linda Kelly during 10-cv-4868 when it was clear she ought to have joined my case.

16. The tampering of 14-cv-3804 Exhibit L is a letter to the PA AG Kathleen Kane. The content of the complaint holds Kathleen Kane's office responsible for maintaining practices consistent with her predecessors AG Tom Corbet, AG Linda Kelly: the protection of school districts engaging in criminal violations of predatory trafficking. Jerry Sandusky's predatory habits were facilitated by a Pennsylvania school district and the school district's trafficking for him was protected by law enforcement and the PA attorney general's office.  Judge Ciavarella was law enforcement participating directly in trafficking and NYPD Captan Burke was immersed in the trafficking business. Throughout 2012 I was able to track my daughter being taken to private residences by Lehigh Transition Service's staff where often she was attackedThe practice was very similar Central Mountain High giving Sandusky an  open pass to take student off campus when he wanted and attempt to rape them.  Thus the concept of law enforcement, or the PA AG's

office tampering with federal law clerks to alter and steer federal and US appellate cases is entirely plausible.

17. This motion for New Trial goes to prove tampering of 14-cv-3804, 14-2221 2nd. Cir. 14-cv-9343, 15-cv-1755, and 16-429 2nd. Cir. by the following methods:

(a). Corrupt persuasion federal law clerks resulting in tampering with the jurisdiction of my cases.

(b). Corrupt persuasion of a federal and state court employees as per 18 U.S.C. § 1503.

(c). Tampering with witness testimony by overdosing my daughter into a convulsed state for 14-cv-3804 and 14-2221 violating: 18 U.S.C. § 1512.

(d). Coercion of my daughter's testimony as per 18 U.S.C. § 1959.

(e). Kidnapping of the plaintiff's daughter to drop his federal appeal 14-2221 2nd. Cir.—by moving back to Pennsylvania—in exchange to see his daughter again. A violation of 18 U.S.C § 1201 and 18 U.S.C. § 1951.

18. Tampering was in effect on appeal for 14-2221 with the added dimension of kidnapping. It was allowed to continue by the court after having been informed of the breach 08/25/2014 Doc. 88, 08/28/2014 Doc. 104-2. My daughter was overdosed twice on appeal. And twice while in captivity until she convulsed causing permanent mental impairment.

19. Overdose occurred on or about 07/11/2014 upon inception of 14-cv-3804 by the appellate and a second time after my not complying with the attempted extortion on or about 08/27/2014.

20. My daughter was held for ransom: If I agreed to move back to Pennsylvania and drop my appeal against my landlord—valued at over $1,000,000 due to a willful scheme to defraud that included 17 years rent overcharges of rent-stabilized apartment in New York City—the Northampton County guardian Lisa Spitale would have Emilie waiting at the bus stop for me.

21. As Emilie was an official resident of 145 W 71 st. Apt. 8G1 NY, NY 10023 my successful extortion to move back to PA would have solved many criminal problems for Amy DeRaymond, Lisa Spitale and my landlord who was venting toxic fumes (1) (2) and venting insects (3) (4) (5) (6) (7) (8) (9) (10) into my apartment 8G1. My daughter was not returned to me after 14-2221 2nd. Cir. was dismissed.  When I tried to contact her 10/12/2014 the Northampton County police intervened.

22. There is a global pattern of Pennsylvania school district's facilitating 18 U.S.C. § 1592 and 18 U.S.C. § 1591 and the Pennsylvania attorney general's office protecting the school districts for having participated in these criminal violations.  2000 Emilie's mother Amy DeRayomond agreed with the Easton Area school District not to report my daughter's injuries to me while she was attending school. During my daughter's (Emilie) last year in elementary school she began manifesting signs of sexual assault during school hours.

2006 Northampton County Judge Ed Smith (now federal judge Ed Smith) and his former law partner attorney Ray DeRaymond violated 18 U.S.C. § 1592 and fraudulently incapacitated my daughter with false claim diagnosis MR317—they knew to be false.

2012  Judge Ed Smith violated 18 U.S.C. § 1959 when he approved a 03/23/2012 petition reducing my summer vacation time with my daughter Emilie Kraemer at the request of guardian Lisa Spitale and mother Amy DeRaymond so that it could be spent instead with Lehigh Transition Services for educational purposes. Lehigh Transition Services then used that time to drive Emilie to a private residence 45 miles west of Lehigh to burn and torture my daughter there. Judge Smith's good friend, my sister Bethlehem police officer G. Kraemer was shown the deep concavities seared into my daughter's arm 08/06/2012 by Lehigh Transition Services employee's and bushed them off. Confirming this was a court approved assault as per 18 U.S.C. § 1959.

23. Moreover, this was the fourth time Judge Smith was violating section § 455 to approve a petition on behalf of his former client Amy DeRaymond that was then used to do inflect harm upon Emilie.

24. 2014 someone corruptly pursued a federal law clerk to tamper with 14-cv-3804 Exhibit L. The only exhibit out of 40 that pointed to Emilie manifesting signs of sexual assault during school hours starting 2000 in elementary school. 14-cv-3804 was then dismissed for factually incorrect reasons.

25. The order 14-cv-3804 Doc 5. is nonsensical. It is not possible for a judge to have reviewed it.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## II. 2000-2012 | HISTORY OF MY DAUGHTER'S TRAFFICKING LEADING TO HER ATTEMPTED MURDER  2013, TAMPERING SDNY 2014

**2000**: Trafficking | 18 U.S.C. § 1591.

Trafficking (signs of sexual assault) started the last year of my daughter's elementary school education.

- 2000 Emilie began wetting herself during school hours in elementary school when attorney Ray DeRaymond and Smith law firm were representing Amy DeRaymond after I sued her for abusing Emilie.  Enuresis during school hours resulted:

- The school nurse and guidance counselor R. Williams both reported it. See. 10-cv-4868.

- The School District made the guidance counselor erase her notes. See. 10-cv-4868.

- 09/2000: Northampton County shut down the guidance counselors children and youth investigation.

- Exhibit L of 14-cv-3804 SDNY was tampered with by federal law clerks to conceal these events. It was the only exhibit out of 40 that raised the issue Emilie's onset of enuresis during school hours.

**A. 2000: My daughter began manifesting signs of sexual abuse—wetting herself during elementary school hours. According to the school nurse she's never done this before.**

08/03/2000: I sued for custody | No. 1990-C-956. |

Attorney Ray DeRaymond, his partner Ed Smith were Amy DeRaymond's attorneys.

- Special Ed Director John Merlo collaborated with Amy DeRayomond to hide Emilie's injures/ traumatic events during school hours.

- 10/2000: Emilie was perfectly normal as confirmed by a 2 day diagnostic conducted by her great uncle Dee Grover, head of child neurology for Saint Christophers Hospital for Children. It included fragile-x, full brain scan, EEG, EKG all of which were normal.

**B. 2005: I sued the Easton Area School District for segregation, violations of FAPE, LRE No. 5779 05/06.**

26. A trafficking recruitment program in Easton PA public schools was brought to light as FAPE deficiencies identified during educational due process #5779 05/06.

- Ray DeRaymond was attorney for Amy DeRaymond and the school district. Ed Smith became Judge Smith.

**2005/06**: Emilie's "pendent placement" diagnosis was established by educational due process #5779 05/06 and the Special Education Appeals Panel Opinion #1727 to be PDD NOS. The commonwealth paid Emilie $255,000 in compensatory education to make up for the education she lost as a normal person with mild social autism. The County of Northampton and Amy DeRaymond circumvented the intention of compensatory education and federal law, obtained false claim MR317 diagnosis after losing due process #5779 05/06 and used it fraudulently bill medicaid for MR317.

27. "Included in procedural safeguards is the concept of "pendent placement," or the guaranteed placement of the child during the pendency of the administrative and judicial proceedings through their conclusion. 20 U.S.C. §1415(j). According to the Third Circuit, once the Appeals Panel rules, its decision becomes the pendent placement." Susquenita School District v. Raelee S., 96 F.3d 78 (3d Cir. 1996).

**C. 2006: Emilie's Grandfather Attorney Raymond DeRaymond and his former partner Judge Edward Smith knowingly trafficked my daughter using false claim MR317 | 18 U.S.C. § 1592**

**12/21/2006**: Judge Smith and his former partner attorney DeRaymond immured Emilie to Northampton County via incapacitation by foisting upon her a mental retardation claim they both knew to be false. As such, Trafficking 18 U.S.C. § 1592 relating to peonage, slavery, and trafficking in persons.

**01/05/2007**: 1990-C-956 Attorney DeRaymond knowingly presented false claim of MR317 diagnosed by Dr. Smock to the court as his proof of Emilie's mental defect to judge Emil Giordano.  The more current County MCO provider Access Services  Inc., approval for Medicaid for false claim MR317 was not used by Attorney DeRaymond.

2007 / 2009 Medical Auditors Hugh S. Smith Ph.D & Associates, P.C. DID NOT list Lehigh Transition Services as part of the Community Systems Involved in their audit.
2007 / 2009 Medical Auditors Hugh S. Smith Ph.D & Associates, P.C. scrubbed all injures and traumas Emilie suffered from their medical reports.

- The primary community system in place: Lehigh Transition Services—responsible for many of Emilie's  burn injures, taking her to parking lots, etc. was not listed by Hugh S. Smith Ph.D &

Associates thus none of trauma's caused by Lehigh Transition Services could be listed. As such the auditor facilitated and insured future traumas, assaults, would go unquestioned. (18 U.S.C. § 1959)

28.  03/2008 Both the school district and Amy DeRaymond lied to Dr. Richard Hess and promoted Emilie was mentally retarded while withholding the 2000 Saint Christopher Hospital diagnostic submitted during due process #5779 05/06 they saw, and knew proved Emilie was not mentally retarded.

## D. 2008: Grandfather Attorney Raymond DeRaymond highly likely responsible for Emilie's torture

**03/2008**: Emilie was attacked. She was methodicly burned— tortured—each of her knuckles were burned, her arms, and her legs were burned. This occurred just before her interview with Dr. Richard Hess retained by federal educational guardian Marcie Romberger.  Dr. Hess was scheduled to evaluate Emilie's mental capacity. A redundancy as Emilie's pendent placement diagnosis PDD NOS was established by the state special educational appeals panel #1727 and federally protected as per 20 U.S.C. § 1514 (j).

29. The attack (torture) had to impair Emilie's communication with Dr. Hess. Emilie had cigarette burns on each of her knuckles, wrists, and arms and walked through school this way. Meaning they were methodical. They tortured her.  The school district did not contact me about the injuries. However Emilie's teachers, (Amy DeRaymond's co-workers) spoke up during Dr. Hess's interview with them. Teacher's cited Emilie's mother, Amy DeRaymond as a trigger for Emilie's behavioral issues. Dr. Hess's recommendation was for the mother to stay away from Emilie. Nether federal educational guardian Marcie Romberger who retained Dr. Hess or the district did anything in reaction to Dr. Hess's email they were cc'd on.

**04/03/2008**: PFA C0048PF-2008-000254: Emilie was attacked. She was methodicly burned— tortured—each of her knuckles were burned, her arms, and her legs were burned. It was her grandfather attorney Ray DeRaymond who minimized Emilie's serious burn injures calling them "spurious".

**04/16/200**8: I sued attorney Ray DeRaymond's daughter, Emilie's mother, Amy DeRaymond for the burn injuries. But surprisingly its Emilie's grandfather attorney Ray DeRaymond who represented Amy DeRaymond. He minimized Emilie's serious deep burn wounds during the

hearing—calling them "spurious". He stated "I can't tell if this is a little bite that came up on the child or a scratch" And then later he changes his position: "To herself, to herself, she does cooking" Attorney DeRaymond never once sought or showed any interest in finding out who was responsible for brutally tormenting his granddaughter. Attorney DeRaymond's entire communication was (a) the allegation of burns was "spurious" (b) His daughter was innocent. Attorney DeRaymond then asked for sanctions against me because I took Emilie to a doctor in New York. I also contacted New York chief medical examiners office who instructed me on how to photograph the burn wounds as they healed.

**07/29/2008**: Dr. Richard Hess cited Amy DeRaymond as the trigger for Emilie's behavioral problems as confirmed by Emilie co-workers.

**07/31/2008**: Amy DeRaymond sought the names of those who spoke out about her in her email reply to Dr. Hess. This was similar to 2000 when Amy DeRaymond collaborated with the school district not to share any information with me about Emilie's injures in school. The school District at that time (2000) made the school guidance councilor R. Williams erase her notes about Emilie wetting herself, and suspected abuse.  What is evident is a clear pattern of trafficking by the District accommodating a willing parent (also teacher) to have her child trafficked By 2013 Amy DeRaymond attempted to murder Emilie and when that failed she overdosed Emilie until she convulsed at least three times preventing her testimony for housing case 14-cv-3804 and US appeal 14-2221 as a resident of 145 W 71 Street Apt. 8G1

**06/17/2010**: my child support was terminated when my daughter Emilie graduated from high school. The order listed the wrong age as the reason for termination (18) when in fact Emilie was 21.

Judge Giordano certainly knew how old my daughter was. He knew he was hiding 3 years of unregistered disability support payments for false claim MR317.  1.5.2007 Judge Giordano allowed attorney DeRaymond to submit false claim MR317 as "proof of mental defect" to declare Emilie a partial incompetent before her 18th birthday took place.

**07/16/2010:** Amy DeRaymond the mother, filed for disability support but did not register the false claim ICD mental retardation 317 disability [Mild mental retardation] she got from Northampton County MCO Access Services Inc., that she and the county used to unlawfully charge for regular Medicaid services for Emilie.  Amy DeRaymond, in fact, did not register any disability to collect disability support for my daughter.

**11/2/2010:** Judge Paula Roscioli did not register false claim disability MR317 the county billed medicaid for on Emilie's behalf or any disability as the reason for her ordering disability support after Emilie's age of majority.

30. This is fraud. False claim mental retardation 317—a diagnosis Northampton County MH/MR and Amy DeRaymond invented and used to bill medicaid was never registered in any of Northampton County Court of Common Pleas disability support documents.

31. This is fraud. False claim mental retardation 317—a diagnosis was established after the district an Amy DeRaymond lost educational due process #5779 05/06. Amy DeRaymond sough the false claim the day transcripts closed for #5779 05/06 02/22/2006.

32. This is fraud. The false claim mental retardation 317 —a diagnosis Northampton County MH/MR and Amy DeRaymond invented was continued even after the PA special education appeals panel #1727 order Emilie pendent placement diagnosis as PDD NOS. The commonwealth paid Emilie $255,000 in compensatory education to make up for the education she lost as a normal person with mild social autism—PDD NOS. The County of Northampton and Amy DeRaymond obtained the false claim MR317 diagnosis after losing due process and began to fraudulently bill medicaid with it.

08/2010 Italian lesson day four: https://youtu.be/Zsle75gwRDs Emilie was easily learning a second language. Easton Area high school and Lehigh Transition Services could not get her past the third-grade level for 10 years. I did it in three days—and in a different language.

**2010/11:** I sued Pennsylvania | 10-cv-4868.
The State maintained dual mental health diagnosis's in violation of my daughter's civil rights and allowed severe cigarette burn injuries (2008) to go unanswered in court:

- Emilie's federally protected, pendent placement diagnosis PDD-NOS established as part of due process 5779 05/06 went unused. False claim MR317 created by Northampton County MH/MR and Amy DeRaymond after due process transcripts closed was in full use by the School District, District contractor Lehigh Transition Services and Northampton County provider Milestones Community Health in violation of 20 U.S.C. § 1415.

- The use of MR317 false claim as the basis for Emilie's education violated federal law 20 U.S.C. § 1415, and the PA Special Education Appeals Panel Opinion #1727 as such had break the 2007 settlement agreement 06-cv-3592 EDPA as ny judge knows parties cannot agree to break the law as part of any settlement agreement.

10-cv-4868 EDPA: Judge Martini never addressed evidence of numerous burns Emilie suffered 03/2008 just before her meeting with Dr. Richard Hess retained by federal guardian Marcie Romberger

**E. 10-cv-4868 Judge Martini allowed violations of 42 U.S.C. § 1985 (2) (3) and 18 U.S.C. § 1512**

03/18/2011 Judge Baratta wrote the bad order appointing Lisa Spitale guardian, removing me as co-guardian while Lisa Spitale was a defendant of my federal lawsuit 10-cv-4868. That action severely impaired my ability to bring my case against Ms. Spitale. (Lisa Spitale was court guardian when Emilie was tortured 2008 and defended Amy DeRaymond 2010 when I sued for custody).

34. 2010 I had Police reports of violence, choking, and punching between Amy DeRaymond and her husband. Doctors report confirming Emilie injures were cigarette burns from one of the top ten dermatologists in Manhattan, an MD from the NYS Chief Medical examiners office. Her observation was what Dr. Felderman identified as cigarette burns were constant with the injures on Emilie's knuckles (e.g. they were all cigarette burns). Judge Koury did not let me use any of these assets. It why he was included in the federal lawsuit with Lisa Spitale.

**03/18/2011:** Judge Baratta ordered Lisa Spitale "permanent guardian." There is no such thing as permanent guardian in the state of Pennsylvania. Judge Baratta, a seasoned judge obviously knew this.

**05/20/2011:** Emilie Kraemer No. 2007-0021 | After ordering Lisa Spitale permanent guardian I asked Judge Baratta for a hearing and he stated he "lost jurisdiction to review it." (because of my appeal) and "will not be taking any further action in this matter."

**07/15/2011:** | NO. 2007-O.C. 0021 | Judge Smith approved Amy DeRaymond's Petition Rule to show cause to confirm Lisa Spitale as Permanent Limited guardian of the Person even though the Court of Northampton County "lost jurisdiction to review" the subject of guardianship in regard

to Emilie. It was required to be heard by the supreme court. Judge Smith was violating section §
455 by hearing Amy DeRaymond's petition as he was her attorney 1999-2001.

**10/12/2011**: Judge Martini, and judge Smith corruptly persuaded Judge Baratta to write a second
guardianship order (for which he lost jurisdiction) for Lisa Spitale as "Permanent Limited
guardian of the Person". I know Judge Martini persuaded Judge Baratta because he dismissed
10-cv-4868 the day after Judge Baratta wrote the second order confirming Lisa Spitale's
guardianship.

**F. 2012: Pronounced Spike in Violence To My Daughter After Lisa Spitale's Guardianship
Re-Confirmed. Judge Baratta's reluctance to appoint Lisa Spitale turned out to be well
founded.**

35. Soon after Lisa Spitale's appointment I became aware of Emilie's trips to private residences,
and parking lots, when she was supposed to be with Lehigh Transition services. Assaults to
Emilie occurred at these places and captured locations on family map. She was forced into
vehicles, fought for her life not to get into them, was taken to a therapist office where they
overdosed her on Fridays, strange vertical marks on her forehead many burn injures and her
attempted murder by 2013.

**03/23/2012**: Court-sponsored 18 U.S.C. § 1959 organized by Lisa Spitale, Amy DeRaymond,
Lehigh Transition Service and Northampton County PA Judge Ed Smith. Judge Smith approved
guardian Lisa Spitale's petition. Lisa Spitale's petition to removed two of my vacation weeks
with my daughter stressing that they needed to be used instead for more time with Lehigh
Transition Services. During the time the court carved out for Lehigh Transition Services to
provide Emilie with an education (07/16/2012 to 08/06/2012) she was instead taken 45 miles
west of Lehigh's offices—halfway to Harrisburg—sadistically tortured and burned with
cigarettes at a private residence. Emilie was never the same afterward. Her friend "Joe" observed
her torture and told Emilie to "be tough" Joe told my daughter to tell me he was "a judge and had
subpoena power" jargon my daughter was completely unfamiliar with. Two of the LTS
employees responsible were recorded by my daughter 07/20/2013.

**2012** Emilie Kraemer: Judge Smith "grabbed Emilie's shoulder until it hurt" in a grand jury
room. See 15-3694 2nd Cir. 4/21/2016.

36. Lehigh Transition Services (LTS) provided no educational benefit to Emilie. Through-out 2012 Emilie was trafficked taken to parking lots (2) and residences where she reportedly would be attacked and correlating injuries would surface. Emilie also reported being taken to various police and law enforcement venues—this included changing at an individual's office who called himself "her friend" and stated he had subpoena power. These activities through out 2012 resulted in numerous burns via cigarettes, tiny tool burns, stove burns, finger print bruises in correlation with being held to burn her, traumas, and scabies a sexually transmitted disease(s) by 3/11/2013.

## G. 2012: Trafficking: Remote Parking lots, Private Residences, Fights in parking lots, STD, Police protection of traffickers.|

The following video is proof that no educational benefit is taking place at all. Lehigh Transition service was contracted by federal education guardian Shanon Moore and charged Emilie's compensatory trust $60,000 a year for this.

**04/03/2012**: ( https://youtu.be/Wknw0S8X-eY ) Emilie texted me 11:51 AM: "Krisi let me sit parking lot all day" on her way to a remote parking lot taken there by Lehigh Transition Services Employee Krisi. Krisi was trafficking my daughter. When LTS got back to me about the Emilie's text they referenced 04/01/2012: the day they actually let her in a parking lot all day but not Wednesday they day I caught them doing it again and then moved to a house after catching them.

- **04/03/2012**: after catching them via ATT FamilyMap they moved to a private residence for 35 minutes where a boyfriend showed up and assaulted Emilie.

- **04/09/2012**: guardians Shannon Moore and Lisa Spitale moved to discredit Emilie by deciding she needed some counseling. The type of counseling that took place Friday afternoons was abusive and coercive. (see 10/19/2012).  Lisa Spitale and Shannon Moore tampered with Emilie's testimony after getting caught trafficking her. It took them only 6 days to arrange for a doctors appointment after getting caught trafficking my daughter. 03/11/2013 when Emilie and I reported a severe rash that turned out to be scabies that nearly killed her—we asked for doctors appointment for over 6 weeks and they never answered.

**H. 2012: July-August: Torture (burned numerous times) resulting from 03/23/2012 petition approved by Judge Edward Smith submitted by guardian Lisa Spitale**

**08/06/2012**: I reported the burn injuries to my sister Bethlehem Police officer G. Kraemer who brushed them off and did nothing about them. Officer Kraemer was close friends with Judge Ed Smith.  My sister soon her divorce was getting a lot of specialized treatment from the county. She did the same drugs as her husband yet, no drug testing, got county apartment, had total custody: the husband got supervised visitation with his daughter, and drug testing. Soon after that she has a job at the Northampton County Court's criminal division and her main clerk contact is Judge Ed Smith. My sister has no legal experience. They become best pals. Painfully crooked. The husband is dead now he died a very young man. I believe they killed him because they tried to kill me and my daughter.

**10/19/2012**: After Friday therapy. Emilie's mouth was swollen, head cut and I-pod smashed. No explanation from her mother. Emilie could barely speak.

**11/17/2012**: Stove burn. "Cooking"

**11/27/2012**: Stove burn—Emilie said she fell from her scooter.

**03/11/2013**: When they were done coercing testimony from Emilie via torture and trafficking she contracted an STD from one of them and her murder was attempted.

**I. 2013: May-August: My daughter's Attempted Murder: Norwegian Scabies:**

2013 my daughter contracted scabies—a sexually transmitted disease connected with healthcare provider Lehigh Transition Services (LTS) refusing medical treatment for what I initially thought to be a bad rash. 03/11/2013, 03/20/2013, 03/23/2013, 04/29/2013, 05/02/2013, 05/03/2013. Emilie was in their care 6 hours a day 5 days a week. LTS falsely reported symptomatic evidence of the disease in their progress reports as expressions of behavior.

03/11/2013 to 05/01/2013: the rash (that was scabies) could be easily be seen by LTS on Emilie's hands Exhibit A.  Amy DeRaymond, Lisa Spitale, Shannon Moore, Lehigh Transition services, Dr. Hernandez, DermOne knowingly exacerbated scabies into Norwegian scabies.

**05/03/2013**: March 2013 progress report.  No mention of rash LTS was told about.  Instead LTS reported Emilie's behavior becoming worse as if with out reason she suddenly became obstinate when in fact she was suffering, in pain from an encroaching debilitating disease—they were informed of and requested to treat medically.  LTS knew what it was e.g., participating in Emilie's attempted murder.

**05/07/2013**: Emilie was stalked while she was on her scooter until she got to a public swing set. She said it was Lisa Spitale. Father believes it was Easton police. Family map shows Emilie was taken to empty parking lot at 4:04PM.

**07.12.2013:** Emilie was perscribed two of the most powerful topical corticosteroids manufactured: Clobetasol and Fluocinonide. Emilie is not prescribed any other medication until 08/07/2013. Between 07.12.2013 and 07.22.2013 the scabies erupts into full blown Norwegian scabies.  Why corticosteroids are to blame: "for unknown reasons, crusted scabies is more common among immunosuppressive patients (e,g, those with HIV infection, hematologic cancer, chronic corticosteroid or other immunosuppressant use). Severity is related to the patient's immune status, not geography." MERCK Pharmaceutical.

37. "Crusted or Norwegian scabies....is caused by hyperinfestation with Sarcoptes scabiei and is characterized by hyperkeratosis, scaling, and crusted lesions over a wide distribution of the body It is usually seen in association with underlying predisposing conditions, including human immunodeficiency virus (HIV), hematologic malignancy, immunosuppressive therapy...

07.16.2013 10:28 AM To: kivory@spininc.org (previously Lehigh Transition Services) "Dear Ms. Ivory, I have noticed since Emilie's return (7.14.2013) to PA and SPIN there has been a marked change in her personality—she does not sound happy, our conversations are truncated. E.K. no longer banters as she normally does. I certainly hope that this does not represent some retaliatory impingement on our (father daughter) conversations as a result of my recent correspondence with Ms. Moore. That said, I am looking forward to hearing a happy and less constrained E.K. in the very near future."

**(i) 2013: Impossible cure—proof of intent to murder**

07.22.2013: Emilie has Norwegian (or crusted) scabies.  I photographed it during Monday night visitation at my mother's home in PA. Thick crusts, skin fissures—crusted lesions clustered around the flexor creases between her thumb and forefinger. These are classic symptoms of

Norwegian scabies. Emilie was diagnosed for Norwegian scabies o8/28/2013 and only after I declared an emergency 08/26/2013.  It is highly unlikely Dr. Hernandez, and DermOne did not know what this was:

(a) "Crusted scabies carries a high mortality, with deaths frequently occurring due to secondary sepsis"
(b) "Crusted scabies is a rare and severely debilitating disease"
(c) "Crusted (Norwegian) scabies...has high morbidity, and secondary bacterial skin sepsis may result in life-threatening bacteremia."

**07.27.2013:** Proof of attempted murder. Norwegian scabies is GONE from Emilie's palms in 5 days. No change in the pharmacological record between 7.12. to 7.27.  Emilie's hands got worse 7.12-7.22 from the new prescription of Clobetasol and Fluocinonide.  Emilie was diagnosed for Norwegian scabies o8/28/2013.

38. It is impossible to cure Norwegian scabies without a scabicide.  With that understanding we know the mother applied a scabicide to Emilie's hand. She knows Emilie has scabies and deliberately propagated it on her.  There was no change in treatment planed. Untreated Norwegian scabies leads to death. Amy DeRaymond growing it.

39. The miracle cure of my daughter's hand was impossible without the scabicide Permethrin cream. Emilie's mother Amy DeRaymond knew she was cultivating Norwegian scabies on Emilie and then cured it on her hands only before I saw her on the weekend after I documented it at my mother's house 7.22.2013.  Emilie's corticosteroid treatment was exacerbating her condition—more of it would only do the same:

40. "For unknown reasons, crusted scabies is more common among immunosuppressive patients (e.g, those with HIV infection, hematologic cancer, chronic corticosteroid or other immunosuppressant use). Severity is related to the patient's immune status, not geography." MERCK Pharmaceutical.

**07/26/2013**: DECOY medication. Emilie's mother gave me an array of over-the-counter medications including eczema cream as part of Emilie's on going "Eczema treatment" by Dr. Hernadez and DermOne. Amy DeRaymond is tricking me she knows Emilie has scabies. It is not possible for over-the-counter anything to cure crusted scabies. Amy DeRaymond KNOWS she is killing Emilie. And Amy DeRaymond demonstrated she can get undocumented pharmaceuticals

from the CVS pharmacy in Easton PA. e.g., she got undocumented Permethrin from someone or someone in her family got it. Permethrin cream (a scabicide) is the ONLY thing that could have cleared up Emilie's hands after contracting Norwegian scabies.

**(ii). Paired dosages of increasing potency—topical corticosteroids —facilitating the diseases progression.**

"For unknown reasons, crusted scabies is more common among immunosuppressive patients (e.g, those with HIV infection, hematologic cancer, chronic corticosteroid or other immunosuppressant use). Severity is related to the patient's immune status, not geography." MERCK Pharmaceutical.

| | | | | | |
|---|---|---|---|---|---|
| Urea Cream 1%<br>Store 07670 | 05/03/2013<br>Rx 0216894 | Activeexp | Qty 85 | $11.25 | Hernandez, Xequiel |
| Hydrocortisone 2.5%<br>Store 07670 | 05/16/2013<br>Rx 0219608 | Activeexp<br>Fill # 00 | Qty 28.35 | $4.12 | Hernandez, Xequiel |
| Urea 10% Cream<br>Store 07670 | 05/16/2013<br>Rx 0219609 | Activeexp<br>Fill # 00 | Qty 85 | $11.25 | Hernandez, Xequiel |
| Fluocinonide .05%<br>Store 07670 | 05/30/2013<br>Rx 0222075 | Activeexpq<br>Fill # 00 | Qty 60 | $10.00 | Esbri / Dermone |
| Clobetasol 0.05%<br>Store 07670 | 06/24/2013<br>Rx 0226152 | Activeexp<br>Fill # 00 | Qty 60 | $10.00 | Gupta / Dermone |
| Risperidone 0.5 Mg<br>Store 07670 | 06/24/201<br>Rx 0226179 | Activeexp<br>Fill # 00 | Qty 14 | $9.50 | Wsdwe / Dermone |
| Risperidone 0.5 Mg<br>Store 07670 | 07/11/2013<br>Rx 022888 | Activeexp<br>Fill # 00 | Qty 30 | $8.71 | Yu, Cha |
| Clobetasol .05%<br>Store 07670 | 07/12/2013<br>Rx 0229010 | Activeexp<br>Fill # 00 | Qty 60 | $10.00 | Hernandez, Xequiel |
| Fluocinonide .05%<br>Store 07670 | 07/12/2013<br>Rx 0229011 | Activeexp<br>Fill # 00 | Qty 60 | $10.00 | Hernandez, Xequiel |

### (iii) Undocumented pharmaceuticals obtained by Amy DeRaymond facilitating attempted murder

| | | | | | |
|---|---|---|---|---|---|
| Hydroxyzine 10 Mg<br>Store 07670 | 08/07/2013<br>Rx 0232918 | Inactive<br>Fill # 0 | Qty 60<br>**Refill 00 Is Fraud** | $10.00<br>**Undocumented** | Mclanahan / Dermone<br>**Pharmaceutical** |
| Elidel Cream 1%<br>Store 07670 | 08/07/2013<br>Rx 0232919 | Activeexp<br>Re-Fiill #2 | Qty 30<br>Qty 60 | $20.00 | Mclanahan / Dermone |
| Risperidone 0.5<br>Store 07670 | 08/15/2013<br>Rx 0234126 | Activeexp<br>Fill # 00 | Qty 30 | $8.71 | Yu, Cha |

**08/07/2013**: They added Elidel to her regimen—pure immunosuppressive—that is all that it does. This is murder. Emilie was saturated with Norwegian Scabies, and they added two courses of sedatives (one undocumented Hydroxyzine) to keep her quite while they killed her. Lehigh Transition Services  reported Emilie's behavior as improving. Emilie was slowly dying. LTS knowingly encouraged Emilie's current course of eczema treatment they knew she was on, could see it was making her extremely ill. It was killing her. Exhibit B, C.


**08/12/2013**: Emilie's Attempted murder: Deliberate attempt to set off septic shock (1) LTS forced an unprecedented animal cage cleaning assignment on Emilie while her hands were covered with sores, skin fissures, and her immunity was extremely  compromised after becoming saturated with Norwegian scabies and was taking very strong immunosuppressive medications:

41. "Untreated scabies is often associated with pyoderma [skin infection] by S pyogenes" Postgraduate Medical Journal 2004: Dr James S McCarthy.

8.12.2013 kivory@spininc.org "My daughter Emilie Kraemer is apparently cleaning animal cages at a pet store. Emilie has a severe skin condition—particularity on her hands and elbows—and absolutely needs to refrain from any cleaning activities and the use of cleaning fluids, cleansers, etc. She should stop this activity at once and no longer to go pet stores/shelters part of her schedule at  SPIN.

42. Exposure to concentrations of bacteria by cleaning animals cages (1) in Emilie's condition put her at an enormous risk of setting off toxic shock syndrome which is almost always lethal.

08/15/2013: Grandmother Allene Kraemer "She was here visiting me and your family when her hands were full of sores she had a cream to put on her hands which she did... a few days later Amy texted me and told me what she had was contagions and to tell every one that was here to visit with her."

08/26/2013: I called DermOne and stated it was an emergency. DermOne confirmed there were no other appointments scheduled for Emilie for three weeks —long after it would be too late for Emilie. DermOne also confirmed the was no plan to change her existing treatment which was killing her.

**08/28/2013**: Emilie was diagnosed with Norwegian Scabies by Dr. Geffner at DermOne.

**08/28/2013**: City MD that night: I have bug bite, vent, no scabies. The MD refused to diagnosis me with scabies. I got a lesson on scabies. My bites were too large, and there is no tunneling thus it cannot be scabies. I ask for medication anyway.


**J. 2013: May-February: Plaintiff's Attempted Murder: Toxic Fumes 8G1. Facilitated by NYPD (2013-2014)**

11/16/2013: I moved out of 8G1 after the radiator came on—it greatly intensified the severity of bites—I suffered hundreds of bites.  11/08/2014: Owner John Downey emailed me PestPro's report on pigeon mites in 8G1's bedroom while seeking double payment.  That is, from 08/28/2013 to 11/08/2014 I have no clue there is a pigeon mite infestation—a nest somewhere. I am tricked into believing I have scabies as Emilie is highly contagious. I later find a vent created by the landlord behind the radiator—so when the heat came on—the mites that were cultivating behind the radiator would eject through the vent the landlord created.  I was overwhelmed by them.

11/30/2013: Tool Burn | Emilie has a tiny tool burn I've seen before.  These types of injures were also confirmed by the University Hospital of Columbia and Cornell 2008 after Emilie's attack as tiny injures.

**K. 2014: Assault | Apparent rape | Tool Burn—Finger print bruises | Emilie Hospitalized after telling me Dr. Hernandez called police "a little bit"**

**01/08/2014**: HPD Inspection. No. 6294/13 | 145 W 71 St. Apt 8G1. B-class violation: Replace floor. Order no. 502.

**01/09/2014**: my daughter Emilie was highly likely raped. The day after HPD inspection for my NYC apartment 8G1.

**01/13/2014**: I contacted federal guardian Shanon Moore about Lehigh Transition Services taking Emilie to a private residence and Emilie needing to see a doctor Monday 01/13/2014. After the mother fused to take Emilie to an MD, I called federal guardian Shanon Moore who contacted county guardian Lisa Spitale. Lisa Spitale—she took Emilie to Dr. Hernandez. To date Lisa Spitale has refused to share Emilie's medical report as has Dr. Hernandez's office.

**01/26/2014**: Torture Tool burn and finger print bruises from holding her while they burned her. Compare to print bruises 07/13/2013.

**01/31/2014**: Emilie was put in hospital after telling me they called police a little bit 01/26/2014 while she was at Dr. Hernadezes office. Dr Heranadez is the same doctor that nearly killed Emilie.

**03.07.2014**: NY CV-007108/14.

**03/26/2014: Judge Ed Smith voted in as federal judge.**
**03/27/2014: Emilie was overdosed with 33.5 mg of Risperidone | Qty105 tablets**

**04/05/2014:** 14-cv-3804 Exhibit L Letter to PA AG KANE

**05/12/2014**: Burn | finger tip | Monday night visitation

**5.16.2014:** 14-CV-3804   S.D.N.Y | Kraemer V. Edelstein | Exhibit L tampered with.
5.23.2014: Federal Judge Rice meeting
5.25.2014: Risperidone  31.5 mg  Qty 126 Tabs | Extreme quantity episodic purchase.

**5.16.2014:** Exhibit L was tampered with. The following paragraph was truncated from its index page at the bottom of the Doc stack making it impossible to connect (there were no page numbers—you could guess) instead of keeping it contiguous with its related pages:

43. "...begs a scary question, at least for me and Emilie—what would have to happen to Emilie for some official to react or state "hey that's pretty bad, I should look into that," and then do something about it? Because apparently, Emilie getting Norwegian Scabies, sundry cigarette burns, suffering from gross neglect, bearing evidence of assault by County officials, wetting herself regularly while she was attending Easton High School, being victimized by fraud, IDEA violations, segregation in school, and who knows what else, is not enough."

**07.11.2014:** 14-2221 2ND. CIR.

**07.11.2014:** 14-2221  2ND. CIR.  07.11.2014: Emilie was overdosed with 30 mg of Risperidone | Qty 120 Tablets

**08.26.2014:** Emilie was overdosed with 22.5 mg of Risperidone | Qty 90 Tablets

44. On or about 08.26.2014 Emilie was overdosed after my not to complying with the ransom for kidnapping. They wanted me to move back to PA dropping my case against my landlord. That was the ransom—if I moved back to PA I could see my daughter again. My daughter was a part time resident at 145 W 71 St. NY NY 10023 Apt. 8G1 at the time. They'll have her waiting at the bus stop for me if I used the bus ticket they sent me and "come back home"  What they were not telling me while attempting to lure me into PA is they were overdosing Emilie—permanently impairing her while she was captive and preventing her from having any meaningful testimony by overdosing her until she convulsed.

45. Emilie was listed on my lease and DHCR had her registered as such a co-tenant with a disability. My moving back would have helped both Lisa Spitale and my landlord. My complaint will show they worked together.

## L. 2014 |  Fraud | Causing Mental Impairment via Overdose As Basis For Interstate Support Application

**07/11/2014:** my daughter was overdosed into a convulsed state by her guardian Lisa Spitale and mother Amy DeRaymond while she was a witness for 14-2221 2nd. Cir. impairing her ability to testify as such a violation of 18 U.S.C. § 1512. Emilie was also prescribed Lamotrigine for the first time to stop the convulsions they caused by overdosing her.

 **07.24.2014:** Northampton County domestic relations support tech Nicole Knecht registered her notarized interstate support (File: 236180 | CSMS# NY75O23NI) on Amy DeRaymond behalf —

without registering false claim disability MR317 the county was using to bill Medicaid for Emilie. Nicole Knecht registered the interstate support demand after 07/11/2014 when Amy DeRaymond and guardian Lisa Spitale overdosed Emilie into a convulsed state with Risperidone requiring the first time documented prescription of anti-convulsant Lamotrigine.

**08/07/2014**: The interstate support was enforced by Clerk Of Court Evelyn Hasanoeddin Support Collection Unit Family Court Of The State Of New York County Of New York.

46. To date at no time was any quality control, or due diligence maintained by ether the State of Pennsylvania, State of New York, or the Corporation Counsel-NYC when considering Northampton County domestic relations support tech Nicole Knecht's support registration. NY MFCU dictates Emilie's Medcaid fraud and overdose it had to be done with Northampton County DA John Morganelli's knowledge, the state of Pennsylvania's knowledge, the oversight of the NY MFC and Assistant NY AG Peter Beauchamp's knowledge. e.g. they knowingly forwarded fraud or the MFCU beyond stupid as the NY Comptroller indicates it is.

**02/18/2015**: My Petition to Vacate Registration containing of Out-of-State Child Support Order was dismissed for non appearance. Family Court Karen Kolomechuko Support Magistrate allowed for interstate fraud simply because I was not there to remind her there was interstate fraud.

**02/18/2015**: I was before housing court Judge Wendt with a copy of the City of New York's request for the DHCR regulated rent of my apartment which Judge Wendt impossibly declined and incorrectly dated his order 02/19/2015. Thus, the reason for my non-appearance. I have since proved tampering of Housing Court's, and Judge Wendts adminstrsative caladar hiding my apperance and my presentation of the City of New York's request for my apartment's regulated rent).

47. My daughter's Easton PA CVS pharmaceutical record shows a clear pattern of overdose. Additionally, I have proof of Emilie's mother providing undocumented sedatives to Emilie. No intervention from the ether states fraud detection units—the burden of proof for this type of crime was put entirely upon the victim parent (myself).

48. CONCLUSION. PA Palmer Elementary school 2000. Emilie began wetting herself while she was in school manifesting signs of sexual assault. The school district covered it up by: (a) making the guidance counselor erase her notes on it and the county shut down her children and

youth investigation. (b) The district fabricated the State's requirements for a mental retardation diagnosis while Emilie was in school by segregating her and tormenting her—thus lowering her IQ and causing behavioral problems.  However, the district lost educational due process hearing #5779 05/06 substantiating that Emilie was normal and could not be mentally retarded as per the 2000 Saint  Christopher Hospital diagnostic conducted by her great uncle Dr. Grover MD  head of child neurology.  Emilie could go to college (she was in fact accepted to 3 community colleges) and with it her ability to speak freely about her experiences. 02/22/2006 The day after transcripts closed for educational due process #5779 05/06 Amy DeRaymond and Northampton County MH/MR secured false claim diagnosis ICD mental retardation 317, began making false claim charges to Medicaid with it Judge Ed Smith and attorney Raymond DeRaymond immuring Emilie to Northampton County via fraudulent incapacitation by 12/21/2006 using the same fraudulent diagnosis (MR317) as the basis for "mental defect" she did not have.

## COMPLAINT | TAMPERING AND BASIS FOR A NEW TRIAL

III. 2014 | TAMPERING WITH FEDERAL WITTNESS TESTIMONY VIA OVERDOSE  |14-cv-3804 SDNY,  14-2221 2nd. Cir. VIOLATION 18 U.S.C. § 1512

**03/26/2014: Judge Edward Smith voted in as federal judge**
**03/27/2014: Emilie overdosed with 60 tab of Risperidone**

Immediately following my daughter's failed attempted murder 08/26/2013 their appeared a heretofore unprecedented and significant quantities of psychotropic prescriptions.
For Six months, there was a consistent, harmful administration of 30 tablets per medication approxamlty per month.

The day after Northampton County Judge Edward Smith was voted in as federal judge 03/26/2014 those quanties quadrupled until Emilie convulsed causing permanent mental impairment.

| | | |
|---|---|---|
| RISPERIDONE 0.5 MG | 09/12/2013 | Qty 30 RX 0238135 |
| BUPROPION SA 150 MG | 09/12/2013 | Qty 30 RX 0238136 |
| **Days until next perscription** | | **44** |
| | | |
| RISPERIDONE 0.5 MG | 10/24/2013 | Qty 35  RX 0244558 |

| | | | |
|---|---|---|---|
| BUPROPION SR 150 MG | 10/24/2013 | Qty 35 RX 0244559 | |
| **Days until next perscription** | | | **36** |
| | | | |
| RISPERIDONE 0.5 MG | 11/29/2013 | Qty 30 RX 0249764 | |
| BUPROPION SR 150 MG | 11/29/2013 | Qty 30 RX 0249765 | |
| **Days until next perscription** | | | **32** |
| | | | |
| RISPERIDONE 0.5 MG | 01/02/2014 | Qty 30 RX 0254343 | |
| BUPROPION SR 150 MG | 01/02/2014 | Qty 30 RX 0254344 | |
| **Days until next perscription** | | | **26** |
| | | | |
| RISPERIDONE 0.5 MG | 01/27/2014 | Qty 30 RX 0258105 | |
| BUPROPION SR 150 MG | 01/27/2014 | Qty 30 RX 0258106 | |
| **Days until next perscription** | | | **26** |
| | | | |
| RISPERIDONE 0.5 MG | 02/23/2014 | Qty 30 RX 0262348 | |
| BUPROPION SR 150 MG | 02/23/2014 | Qty 30 RX 0262350 | |
| **Days until next perscription** | | | **12** |

03/07/2014 | NY CV007108/14 | Kraemer v. Edelstein

03/26/2014 JUDGE ED SMITH VOTED IN AS FEDERAL JUDGE

| | | | |
|---|---|---|---|
| RISPERIDONE 0.5 MG | **03/27/2014** | Qty 60 RX 0267966 | |
| **Days until next perscription** | | | **20** |
| | | | |
| RISPERIDONE 0.25 MG | 04/16/2014 | Qty 45 | |
| **Days until next perscription** | | | **40** |

05/16/2014 | 14-CV-3804 | Kraemer v. Edelstein | Exhibit L tampered | pages were hiden that pointed to my daughter wetting herself during school hours starting in elementary school 2000

| | | | |
|---|---|---|---|
| RISPERIDONE | 05/25/2014 | Qty 126  3 days after conference with PA federal | |
| magistrate Judge Tim Rice. (31.5mg Total) | | | |
| **Days until next perscription** | | | **45** |

7.11.2014 | 14-2221 2ndCir. | Kraemer v. Edelstein

| | | | |
|---|---|---|---|
| RISPERIDONE | 07/11/2014 | Qty120  (30.0mg Total) | CONVULSIONS |
| LAMOTRIGINE 0.25 MG | | Qty 30 | |
| **Days until next perscription** | | | **45** |
| | | | |
| KIDNAPPING | | 08/17-26/2014 I refused deamnd to return to PA.  Emilie was overdosed | |
| | | | |
| RISPERIDONE | 08/26/2014 | Qty 90  (22.5mg Total) | CONVULSIONS |
| LAMOTRIGINE 0.25 MG | | Qty 60 | |
| **Days until next perscription** | | | **18** |

09/04/2014 | 14-2221 2ndCir. | Kraemer v. Edelstein | Dismissed

| | | | |
|---|---|---|---|
| RISPERIDONE | 09/14/2014 | Qty 45  (11.0mg Total) | CONVULSIONS |
| LAMOTRIGINE 0.25 MG | | Qty 60 | |

49. Failing what had to be attempted murder after Emilie contracted scabies 2013—Lisa Spitale and Amy DeRaymond overdosed Emilie until she convulsed preventing her testimony during 14-cv-3804 and 14-2221 about any of her experiences that lead to the STD, how she spent her day at LTS, who she met, why she was in parking-lots and private residences:

50. One can image my line of inquiry to Emilie for the judge during 14-cv-3804: When do you think you got the rash? We know it's scabies now and not eczema.  Who is your friend with subpoena power? What corner in his office did you change in? Which would invariably lead to questions like: How did you get all these burn marks on the same arm (2012)? How did you get all these burn marks (2008)?  This hand print bruise on your arm photoed 07/13/2013—do you remember how you got that?  Where?  05/07/2012 What happened in this parking lot.

**05/07/2013**: Who was talking to you on your swing? What did you mean Krisi let you in a parking lot all day? Do you remember this parking lot? That parking lot? The fight in this parking-lot? (Showing her pictures) Can you identify your friend with subpoena power?  What were you doing in that house, Do you remember these burns right after our vacation? Is this Crystal's dog logger? Near Hamberg PA?  Your friend told you to be tough when they were burning you. I think I know who it is here is a picture—do you recognize this person as the person who told you to "be tough"?

51. My pro se interview of my daughter for discovery in the SDNY would be an extremely bad day for many Pennsylvania, New York officials and defendants—something I can prove they avoided by tampering with federal evidence and overdosing my daughter. What comes out of that is global tampering of all my cases within the SDNY and the Second Circuit for violations of 18 U.S.C. § 1503, 18 U.S.C. § 1512, and 18 U.S.C. § 1959.

52. My daughter Emilie Was Overdosed Until She Convulsed After I Filed In Ny CV-007108/14, 14-CV-3804, 14-2221: See 14-cv-4393 SDNY Amended Exhibit DD for an original copy of the CVS pharmacy record. 18 U.S.C. § 1512 (b) (3) constitutes a broad prohibition against tampering with a witness, victim or informant. See, United States v. Murray, 751 F.2d 1528 (9th Cir.), cert. denied, 474 U.S. 979 (1985); United States v. Wilson, 796 F.2d 55 (4th Cir. 1986).

**Table 1.**. Impairing Daughter's Testimony via Overdose in New York State and Federal venues. See 14-cv-9343 amended. Exhibit DD for original CVS file.

**03.07.2014 |   NY CV-007108/14   HP |   Kraemer V. Edelstein         Risperidone 33.5 mg  | Qty105**

| RISPERIDONE 0.25 MG | 03/27/2014 | Active | Qty 30 | $8.01 | YU, CHA |
| RISPERIDONE 0.5 MG | 03/27/2014 | Active | Qty 30 | $7.97 | YU, CHA |
| RISPERIDONE 0.25 MG | 04/16/2014 | Active | Qty 45 | $10.00 | YU, CHA |

**5.16.2014   |   14-CV-3804      S.D.N.Y |   Kraemer V. Edelstein         Risperidone 31.5 mg  | Qty126**

| RISPERIDONE 0.25 MG | 05/25/2014 | Active | Qty 126 | $20.0 | YU, CHA |

**7.11.2014   |   14-2221          2ND. CIR. | Kraemer V. Edelstein         Risperidone 30.0 mg | Qty120**

| RISPERIDONE 0.25 MG | 07/08/2014 | Active | Qty 30 | $8.68 | YU, CHA |
| RISPERIDONE 0.5 MG | 07/08/2014 | Active | Qty 30 | $8.63 | YU, CHA |
| RISPERIDONE 0.25 MG | 07/11/2014 | On Hold | Qty 30 | $0.00 | YU, CHA |
| RISPERIDONE 0.5 MG | 07/11/2014 | On Hold | Qty 30 | $0.00 | YU, CHA |
| LAMOTRIGINE 0.25 MG | 07/11/2014 | Active | Qty 30 | $3.16 | YU, CHA |

**8.26.2014 | Kidnapped/14-2221 2ND. CIR. | Kraemer V. Edelstein      Risperidone 22.5 mg | Qty 90**

| RISPERIDONE 0.25 MG | 08/26/2014 | Active | Qty 90 | $10.00 | YU, CHA |
| LAMOTRIGINE 0.25 MG | 08/26/2014 | Active | Qty 60 | $5.56 | YU, CHA |

**9.14.2014 | Kidnapped                                      Risperidone 11.5 mg | Qty 45**

| RISPERIDONE 0.25 MG | 09/14/2014 | Active | Qty 45 | $10.00 | YU, CHA |
| LAMOTRIGINE 0.25 MG | 09/14/2014 | Active | Qty 60 | $5.56 | YU, CHA |

53. 07.24.2014 Judge Roscioli filed to collect interstate support 9-5 days after they caused my daughter to have seizures. Ms. Fontno could get any drug in any quantity from the Easton CVS undocumented by the CVS national database.

54. 8.14.2014: I filed petition #236180 Doc. 41-808-14 to vacate the interstate order due to a false claim of MR317. No specific disability was listed in their application.

**Table 2.  Ratio Of Convulsant Risperidone To / Anti-Convulsant Lamotrigine**

CV-007108/14  N.Y.H.P.  Kraemer V. Edelstein        3.07.2014  Risperidone 105 Tablets (33.5 mg)
**105/0 Ratio of convulsant Risperidone to anti-convulsant Lamotrigine**

14-CV-3804    S.D.N.Y    Kraemer V. Edelstein        5.25.2014  Risperidone 126 Tablets (31.5 mg)
**126/0 Ratio of convulsant Risperidone to anti-convulsant Lamotrigine**

14-2221    2ND. CIR.    Kraemer V. Edelstein        7.11.2014  Risperidone 120 Tablets (30 mg)
**120/30 Ratio of convulsant Risperidone to anti-convulsant Lamotrigine**

14-2221    2ND. CIR.    Kraemer V. Edelstein        8.26.2014  Risperidone 90 Tablets (22.5 mg)
**90/60 Ratio of convulsant Risperidone to anti-convulsant Lamotrigine**

Closed | Northampton County Pa.                9.14.2014   Risperidone 45 Tablets  (-- mg)
**45/60 Ratio of convulsant Risperidone to anti-convulsant Lamotrigine**

**7.11.2014**:  Evidence shows Emilie began convulsing from overdose as early as 5.25.2014 as the anti-convulsant Lamotrigine was prescribed the same time as the convulsant 7.11.20104. That is, defendants knew she was convulsing as far back as 5.25.2014 and let it continue untreated until I filed in the US Court of Appeals.

55. CVS documentation proves defendant's knowingly brought about convulsions on at least 3 of the five overdoses. Overdoses were arrange exclusively for New York State Court venues NY Hosing Court, SDNY, and the US Court of appeals.

56. CVS documentation proves Amy DeRaymond was able to secure undocumented sedatives from CVS in Easton PA.

VI. 2014 | TAMPERING WITH COURT DOCUMENTS  3804 14-2221 | 1503  (2000)

A | 14-CV-3804 SDNY | ALTERING EXHIBIT L | HELPING PARTIES IN PA. Exhibit L was tampered with obscuring my daughter's history of "Wetting Herself" At School [e.g., enuresis a

manifestation of sexual assault that occurred during school hours] The clerks deliberately prevented pages 2, 3 from being attributable to any exhibit therefore unusable.

57. Tampering with exhibit L concealed a historical link to the STD Scabies / Norwegians Scabies origin. Exhibit L stated a manifestation of illegal sexual conduct expressing itself as enuresis while my duaghter was in elementary school. That she actually ended up with an STD (2013) within a tightly controlled schedule narrows the origin—which a federal law clerk clouded.

58. No ruling could be made on the two pages truncated from their first indexing page "planted in mid-air". Judges would not able to credibly place the origin of my daughter's Norwegian scabies I aver traveled from PA to NY. Given the scienter present in the tampering of Exhibit L, Doc.8, and the resulting extreme hostilely from federal judges [they allowed my extortion] an amalgam fact is created—the tamperers of physical and material facts also tampered with the opinion of Judges. This is indisputable.

**a.** Federal Law clerks willfully broke exhibit pages into seemingly illogical parts to create unusable information specifically for Exhibit L.;  No other exhibit received this treatment.:
Doc. 2-1  | 32 pages  | Ends with page one of Exhibit L.
Doc. 2-2  | 21 pages | Starts with remaining pages of Exhibit L —unmarked.
Doc. 2-3  |— pages | Arbitrarily ends with separate exhibit K allowing for:
Doc. 2-4  | 04 pages | To start with second Exhibit L.

**b.** Exhibit L was unique in that it was the only exhibit out of 40 that pointed to proof of my Emilie "wetting herself" during school hours that started while she was in her last year of elementary school (2000).

**c.** The exhibits were divided into 4 groups of widely varying page lengths and were strategically broken to hide the last two pages of exhibit L. There was no need to stop at exhibit K for Doc. 2-3 needlessly breaking the contiguous flow of pages creating an extra exhibit L at a starting page. Doc. 2-4 only has 4 pages its starting page also an Exhibit L.

**d.** Thus no way for the appellate judges (law clerks) to discern with any certitude or associate the last two pages of Exhibit L with Exhibit L.

e. Other exhibits (letters) that proved the existence of scabies a sexually transmitted disease were not tampered with.

B | 14-CV-3804 SDNY | TAMPERING  DOCUMENT 5. |  MOTION TO DISMISS Material facts DCHR and HPD were switched with each other in and causing my cases dismissal.  I am not suggesting the judge was confused or incompetent because it looks more like someone literally cut and pasted DCHR and HPD and deliberately put them wrong place when presenting to Judge Preska: DOC 5. "According to Plaintiff, HPD would not send an inspector because the "supervisor would not accept any employee liability that might arise from inspecting an infected/ infested apartment."

59. What I stated in my complaint: "During a conversation in March with DHCR inspector Barbara Robinson, she asked if HPD had placed a notice on the apartment door condemning the apartment and thus allowing for the $1.00 dollar per month rent reduction. They Didn't."  I had a previous conversation with her about mites I scabies in the apartment.

60. She then stated her supervisor would not accept any employee liability that might arise from inspecting an infected/infested apartment and thus would not let her go to 145 West 71 St. Apt. 8G." "HPD refuses to recognize an apartment infested with parasites and DHCR will not perform a required inspection for fear of an apartment infested with parasites." It was impossible to miss my meaning. Law clerks invented facts and Judge Preska ruled to dismiss predicated on those invented facts. Worse HPD inspectors approved the landlords repairs 2.10.2014 yet DHCR was refusing to inspect 8G1 4 weeks later 3.4.2014 for saftey reasons and then did nothing about it. There is a blatant derliction of duty simply sitting here—any reasonable lucid judge could spot that in a second. My case was dismissed as frivolous. Ordinarily one could correct oversights like this on appeal. The court offered to send it back to the SDNY—but SDNY made an irrational decssion, a blender and blurer of facts that at first appear to be intentional—which they are.

C | 14-CV-3804 SDNY | TAMPERING  DOCUMENT 8. | 18 U.S.C. §1503 WAS USED TO ALLOW FOR EXTORTION 18 U.S.C. §1951 The law clerks added an extra page to my MTR a goofy Exhibit "USB Parade Spectacular" The extraneous, unrelated, goofy exhibit caused an extra unwarranted court communication between the law clerks working for Judge Preska and the appellate court.  The end result was extortion during my appeal without any protection from the court after informing them. (Doc.104-2) My daughter was held for ransom in exchange to

drop my case against my landlord. When I did not comply they overdosed my daughter until she convulsed on or about 08/27/2014 and then never reinstated contact with her.

## V. 2014 | KIDNAPPING | EXTORTION | DURING US APPEAL 14-2221 US APPEAL FOR THE SECOND CIRCUIT

08/17-25/2014: I was extorted by Northampton County guardian Lisa Spitale during my U.S. appeal 14-2221 after she and Amy DeRaymond kidnapped my daughter as defined by 18 U.S.C. § 1201. The kidnapping was allowed to continue by the U.S. Court of Appeals after it was informed of the breach 08/28/2014 Doc. 104-2. Lisa Spitale, Amy DeRaymond and the Northampton County police were chiefly responsible for maintaining the kidnapping. Communication with my daughter was abruptly cut off on or about 08/22/2014. The terms were to move back to Pennsylvania dropping my appeal 14-2221 against my landlord valued at over $1,000,000. In exchange I would be able to see my daughter at the bus stop in Easton Pa. As Emilie was also a resident of 145 W 71 St. Apt. 8G1 NY, NY 10023 my successful extortion to move back to PA would have solved a number criminal problems for Amy DeRaymond, Lisa Spitale and my landlord who was venting toxic fumes (1) (2) and venting insects (3) (4) (5) (6) (7) (8) into my apartment.

**(i) Northampton County Police protected the kidnapper's overt act**

08/24/2014: 8:22 AM After my daughter's communication was cut off as part of the kidnapping I called Northampton County's 311 services and asked for welfare check on my daughter. 8:44 AM Police officer Siegfried of the Easton police called and let me know he decided he would press criminal charges for my making the call. He claimed to see my daughter and refused put me in contact with her forwarding her kidnapping and injury (overdosing) while she was captive.

**(ii) kidnapper's overdosed my daughter until she convulsed permanently impairing her mentally**

61. My daughter was overdosed at least twice until she convulsed while she captive as part of her kidnapping, permanently impairing her mentally and her ability to testify. Emilie has stated she was taken to grand jury rooms in Northampton County starting 2012. Emilie has stated she was taken to a grand jury room and judge Edward Smith grabbed her shoulder until it became very painful while in this room.

08/25/2014: excessive quantities of Risperidon 90 Tablets (22.5 mg) were prescribed
08/25/2014: anti convulsant Lamotrigine was prescribed
09/14/2014: excessive quantities of Risperidon — Tablets (—.5 mg) were prescribed
09/14/2014: anti convulsant Lamotrigine was prescribed.

08/25/2014: motion for relief. See 14-2221 Doc. 88

08/25/2014: excessive quantities of Risperidon 90 Tablets (22.5 mg) were prescribed. The Anti-convulsant Lamotrigine was also prescribed. On or about 08/27/2014 my daughter was overdosed a second time after my not complying with kidnapping demands to move back to PA (and with it my daughter's dual residency and my appeal) if I wanted to see my daughter again.

**(iii) My daughter's violently imposed impairment prevented her testimony against police, kidnappers**

62. The plaintiff believes his daughter was presented to New York justices or law enforcement via camera interviews while she was in a convulsed state impairing her testimony in violation of 18 U.S.C. § 1512. I know false testimony by daughter had to be recorded if she said anything negative about me. If my daughter knew she was free from harm she would never say anything negative about me. Her situation is very much analogous to an ISIS prisoner. Those around her, tortured her and had the ability to get a petition approved 2012—used the time it allocated for her education to instead take Emilie 45 miles west of Lehigh Transition Services and have her tortured by the people the order forced her to be with.

**09/04/2014**: My daughter was not returned to me after 14-2221 was dismissed and I had no way of contacting her. When I went looking for her 10/12/2014 I was surrounded by Easton police (including officer Meg who approved the visit) and told to leave despite showing officers court documents approving my visitation. They were prepared to shot me. I was questioned by officer Meg who pretended not to recognize me while the officer to my right kept bobbing up and down with his hand on his gun.

**10/27/2014**: and again 11/01/2014 Emilie a called me from the house phone to come see her. As per my court order I had Monday visitation 10/27/2014. There was no superseding order. No problems occurred. Emilie stated the cops were responsible. When she called again 11/01/2014 for weekend visitation and I picked her up. Officer Meg called and wanted to know where I was

taking her.  This was the start of them attempting to flip violations of 18 U.S.C. § 1201 and  18 U.S.C. § 1951 /1952.

**(iv) Northampton County police, move to flip thier violations of 18 U.S.C. § 1201 and 18 U.S.C. § 1951 /1952.**

63. 18 U.S.C. § 1201 holds (a) Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, except in the case of a minor by the parent thereof, when (2) any such act against the person is done within the territorial jurisdiction of the United States; shall be punished by imprisonment for any term of years or for life and, if the death of any person results, shall be punished by death or life imprisonment. (c) If two or more persons conspire to violate this section and one or more of such persons do any overt act to effect the object of the conspiracy, each shall be punished by imprisonment for any term of years or for life.

64. Thus, inventing a PFA testimony where Emilie stated something that was the opposite of kidnapping after she was kidnapped  "I never want to see him again" was pretty high on the to do list for those facing imprisonment for any term of years or for life.

**11/04/2014**: PFA | Court Racketeering | Upon returning to PA Sunday evening as per the order Emilie's the mother reported it as Emilie sneaking out of her house and manufactured a PFA. Judge Baratta was appointed the judge for PFA C0048PF-2014-000815 22.

65. The hearing was not until 2.6.2015 despite having been reported 11.4.2014 —the day after my 02/05/2015 New York housing court hearing #79433-14.

**02/04/2015**:  Northampton County guardian Lisa Spitale (1) (2) refused to tell me who the judge was.

**02/05/2015**:  I called the Northampton County PFA office and sent my answer to Judge Baratta and Lisa Spitale 02/5/2015. 02/06/2015: the day of the hearing judge Baratta was replaced with judge Zeto and the Northampton County Court of Common Pleas law clerks stated Judge Zeto was not forwarded my answer because it was not addressed to him.

66. My answer, item one pointed to Judge Baratta's order of the 1999 home study report that substantiated Amy DeRaymond's abuse of Emilie. It included reports of cigaret burns, stove

Northampton County police are responsible for my daughter's abduction during 14-2221 2nd. Cir. The Northampton County police were integral to it—their actions cast them as private security and outside of the law. See 14-2221 Docs. 95-2, 104-2, 115-2.

70. 2012 /2013 My daughter was reporting inexplicable time with police in various offices after getting picked up by Lehigh Transition Service—security rooms for example where she was able to watch people in the center square in Easton PA via police security. Changing in the same room at her "friend's" office with subpoena power. She reportedly used a corner in his office.

71. Thus, after asking for a benign welfare check 08/24/2014 | 8:22 AM after my daughter's communication was cut off I called Northampton County's 311 services. Police officer Siegfried of the Easton police decided he would press criminal charges for my making the call. He claimed to see my daughter but then did not put me in contact with her forwarding the abduction. 08/25/2014 I filed a motion for relief See 14-2221 Doc. 88.

**Extortion dialogue:**
8.17.2014: 5:34 PM | AK: "No need for you to be on the streets. You are welcome to come here with me and any one of your brothers or sister. No one is after you Tom Or Emilie All you need to do is come here and have a normal conversation with you and family and Amy. NO ONE wants to take Emilie AWAY FROM YOU!!! [On 8.22.2014 they take Emilie away from me. In exchange for ransom to speak with her again —collaborating with my landlord. 14-2221 is worth $900,000+ to me. After NYC HPD 6294/13 approved repairs 2.10.2014 the landlord attempted to murder me in the apartment via toxic fumes each time I tried to move back in. Fumes are caught 2.19.2014 6:12 AM via infrared camera leaching up from the floor. 2.19.2014 EMT's refused to enter 8G1—due to the intensity of the fumes. 3.4.2014 NYS DHCR refused to inspect 8G1 citing it was to dangerous to inspect. I am living in hotels as a result and running out of money.

8.19.2014: 4:05 PM | AK: "Tom Can you get into your apartment? I assume you still have a key. By now if you had bugs they would be dead and i could pay to have your apt cleaned you really need to leave NY and get a apt some where cheaper living expenses are toooo high in NY [AK wants to know if I'm locked out. The insects are not dead because someone built a vent specifically designed to pervade the apartment 8G1 with insects underneath the front window. When my housing case was filed Kraemer v. Majestic CV-007108/14 Amy Fontno overdosed Emilie the following day 3.27.2014. Lisa Spitale, Amy Fontno, Judge Rice and NC know my housing status]

08.19.2014: 4:33 PM | LISA SPITALE ESQ | OFFICER OF THE COURT: "Dear Ms. Fontno and Mr. Kraemer: As you should be aware, I am the guardian of the person of Emilie Kraemer. I have recently been contacted by members of Emilie's extended family (paternal). They have expressed a desire to visit with and remain a positive presence in Emilie's life. It is my understanding that the paternal relatives have, for various reasons, been permitted very limited contact and/or visitation with Emilie. It is my recommendation that Emilie be permitted regular and frequent contact with her extended family. I expect that both Ms. Fontno and Mr. Kraemer will encourage such contact. Should you have any questions or concerns, please do not hesitate to contact me

**Lisa Spitale was coaching my mother to conduct the extortion (she has no clue/motivation to communicate the following):**

08.19.2014: 4:59 PM | AK: "I have not read your appeals court | I am trying to help you And Emilie No reason you and her have to sleep in a car The he--with your law suits which is why you are in the situation now broke. So get off your high horse and deal with what is happening right now in your life. You and emilie will stay here for the week end !!!! I will put you up at a hotel, motel what ever if you think it is to bad staying with me. But Emilie will stay with me. Got it. You don't have a lot of choices.
[Their not letting me speak with my daughter and issue an ultimatum 26 minutes after Federal / County guardian Lisa Spitale's email]

08.19.2014: 6:35 PM | AK: "Just read your appeals to the court. It is excellent and I hope you win big!! But in the mean time we still have to deal with your problems now at this moment Staying in a hotel on NY is not the answer So come up with something else.  [Their not letting me speak with my daughter and complimenting my case—someone from PA corruptly persuaded clerks to tamper with 14-cv-3804 exhibit L and Doc 8.] See 15-3698 Doc. 139 for proof of 18 USC §1503 violations.

08.22.2014: Motion To add defendants Doc. 85 | Freya Kroger (Lehigh Transition Serivces/ SPIN), Then former federal guardian Shannon Moore, federal guardian Lisa Spitale, and Northampton County Office of Developmental Programs. [They started paring my daughters conversations down with me from 7.11.2014 forward. They started cutting off communication with my daughter 8.22.2014 and aggressively pushed for my return to Pennsylvania./ 08.23.2014: Emilie's phone stolen from her by Amy Fontno / Lisa Spitale.

08.22.2014: 11:30 AM | AK: "Have you received the ticket to come see Emilie get off at william penn park and go i can get Emilie and meet you there why dont you come in sat and we can go from there.
[Their not letting me speak with my daughter. Ambiguity. They have no intention of letting me see her.]

08.22.2014: 10:42 PM | AK "Are you coming here tomorrow on the bus. Did you get the ticket."
[Their not letting me talk to my daughter]

08.23.2014: 3:12 PM | TK: Why in the world would you want to communicate with the individual largely responsible for having your grand daughter injured? And you saw the injuries. Do you think Emilie deserved to be injured? Or is it like you always say just go along with the crowd and maybe they'll go away? [This day my daughter's cell phone is dead. No signal. She is gone.]

08.23.2014: 11:37 AM | AK: "Have know [no] idea what you are talking about. Did you get the bus ticket??" [AK is very aware that Amy Fontno sadistically abused Emilie via the 1999 NC Court Home Study report. AK is quoted that Amy Fontno burned Emilie with cigarettes, locked her in closets, and  always had dirty clothing. Their not letting me speak with my daughter.]

08.23.2014: 2:47 PM | AK: "Did you get the bus ticket"

08.23.2014: 12:23 AM | AK: "Where are you"

08.24.2014: 10:05 AM | AK: "I saw emilie yesterday. She is fine. You just need to come here." [Their not letting me speak with my daughter and letting me know they have visitation — Ransom give up 900k 8G1 14-2221]
08.24.2014: 1:58 AM | AK: "You need to come home !!!" [The plaintiff believes going to PA will likely result in his arrest due to officer Siegfried's statement of filing criminal charges— Ransom give up 900k 8G1 14-2221]

08.25.2014: I file Motion Doc. 88: To Be Protected from Retaliation / Officer Siegfried press criminal charges / welfare check Easton Police—Officer Siegfried—said to press criminal charges for my asking to check on my daughter i.e., a welfare check. 08.25.2014: 11:21 AM | AK: "Tom Get on bus and come here if you don't want to stay with me ill get you a room to stay

in stop being a thick head we all have are ups and downs." [Their not letting me speak with my daughter. Fabricating a narrative —no basis in fact.]

8.25.2014: 12:39 AM AK: "Good night TOM TIME TO COME HOME"
[Their not letting speak with my daughter]

8.26.2014: 2:44 PM | TK: Where's my daughter?
Overdose Emilie: 150 Tablets of Lamartine (60) and Risperidone (90) [Their still not letting me talk to my daughter and they are preparing to overdose her until she convulses again. They bought extra anti convulsant - Lamotrigne for the event. And PS depending on the type of seizure they set off it could kill her]

8.26.2014: 11:48 AM
AK:" I have nothing to do with emilie phone if you look back i told you to come here sat or Sunday and emilie and i would pick you up at park and stop on william penn even sent you a ticket charge me with anything you like, but also know none of them are true if you dont have money how are you filing all these complaints better you put that energy and time to finding work"
[Their not letting me speak with my daughter and circumventing the fact they have or are about to give her another massive overdose—my mother is backpedaling here— it appears she knows what they are doing to Emilie and is attempting to absolve herself of any wrong doing].

08.26.2014: I file Motion Doc: 95-2: Produce Subject Matter, Witness, and Victim EK.

08.26.2014: 3:35 PM | AK: "She is at school Why don't you just come to pa". [Tuesday. Their still not letting me speak with my daughter—and they overdosed her ]

8.27.2014: 8:32 PM | AK: "Did you ever get the bus ticket? Are you back in your apartment ?? MS Kraemer Your MOTHER".
[Their still not letting me talk to my daughter, sent me a one way ticket to PA and about $70.00 dollars]  END.

8.28.2014: I Motion Doc.104 To Be Protected From Extortion. 8.29.2014: Landlord's attorney Duval filed for non-pay #27965 / 794331-14 | 14-2221 is still active.

9.4.2014: I Motion Doc.124: for Emilie L. Kraemer to Be Entered As a Witness to the Case. My case was dismissed within hours after filing. Having Emilie as a witness in New York was the last thing Judge Preska's office, Judge Rice, Amy Fontno and Florence Edelstein wanted. The U.S. Attorney's Office and FBI for the SDNY have no tolerance for witness tampering and Emilie was just overdosed.

09.24.2014: I obtained Emilie's CVS patient profile find fraud /overdosing

09.25.2014: Northampton County guardian Lisa Spitale lied about Emilie's medication in response to my inquires: lisamspitale@aol.com "Dear Mr. Kraemer: I have received multiple emails from you demanding that Emilie stop taking medications which you believe have been prescribed to her. I do not know how you obtained what you believe to be a list of Emilie's medication, as you are not her guardian. Much of your information is inaccurate. In addition, please be assured any medication Emilie may take would be prescribed by one of her treating doctors and would be carefully monitored by the prescribing doctor."

## VI. 2014 | TAMPERING WITH JURISDICTION |

72. The origin or locus of corrupt persuasion of federal law clerks in each federal case began at the pro se desk residing at 500 Pearl St, New York, NY 10007.
**(i)** Each of the 18 U.S.C. §1503 violations cited in this complaint resulted from court staff Judge Loretta A. Preska's office had a responsibility for as Chief Judge.
**(ii)** Two pro se desk clerks advertised their prejudice in my cases suggesting their intent to tamper.

73. For example, upon my filing of 14-cv-9343 it was stated by the pro se desk clerk: "its crazy to sue judges" when I was not suing any judges:

**(i)** The judges I did sue were in Pennsylvania and part of federal compliant 10-cv-4868.
**(ii)** I did not know this clerk.  Or how he came to know I sued judges in Pennsylvania.
**(iii)** When I added motions of candor I was told by a Pro Se clerk that candor motions could not be filed and I would have to amend my complaint if I wanted to add anything.
**(iv)** After stating that I filed motions of candor before (10-cv-4868) the clerk then let me file candor motions.
**(v)** The same clerks stated motions of candor would delay the admittance of my case increasing the need for review time. Subsequently 106 days after filing 14-cv-9343 I filed a separate but

related case (03/09/2015 | 15-cv-1755 | filed | Judge P. Kevin Castel) in regard to a fraudulent support demand from Northampton County Court of Common Pleas PA.
It was then 14-cv-9343 was granted leave to proceed in New York:

**03/09/2015:** | 15-cv-1755 | filed | Judge P. Kevin Castel
**03/13/2015** | Doc. 9 | 14-cv-9343 | order granting IFP application: "Leave to proceed in this Court…is authorized".
**03/18/2015** | Doc.11 | 14-cv-9343 was transferred to the EDPA where "it's crazy to sue justices".
**06/11/2015** | Doc 9. |  EDPA Order that the amended complaint is dismissed with prejudice, pursuant to 28 u.s.c. § 1915 (e)(2)(b)(i)

74. The transfer of 14-cv-9343 was filed on or about the time I was drafting a motion to consolidate 14-cv-9343 to 15-cv-1755.
03/26/2015 | 15-cv-1755 |  Doc. 5. |  Motion to consolidate 14-cv-9343 to 15-cv-1755.

75. There continue to be improper decisions coming from Judge Loretta A. Preska's office in regard to jurisdiction when my daughter Emilie Kraemer is involved. It should be noted that Emilie was also a resident of New York at 145 West 71 St. New York, NY 10023 as recognized by DHCR at the time of my federal lawsuits.

TAMPERING WITH 15-cv-1755

1. The 03/13/2015 | Doc. 9 | 14-cv-9343 | order granting IFP application: "Leave to proceed in this Court…is authorized" was circumvented and lead to the tampering of 15-cv-1755, and 15-cv-1521. These cases had to be closed by law clerks. Any reasonable person (attorney) reading the orders of dismissal coming out of 15-cv-1755, and 15-cv-1521 will find incoherent, nonsensical legal concepts that miss crucial facts about the cases and were dismissed in the absence of any credible analysis:

2. 15-cv-1755 dismissal Doc.17 was so strange and devoid of mentioning any of the core merits of my case I filed a motion to reconsider Doc. 20 | 04/14/2015 despite the fact it was deemed "futile" to file an appeal.

76. ("Given that Kraemer recently filed an action against law guardian·Spitale and the child's mother, Amy Fonto, Kraemer v. Fontno, No. 14-CV-9343 (S.D.N.Y.), which has been transferred to and is now pending in the Eastern District of Pennsylvania, Kraemer v. Fontno, No. 15-

CV-1521 (JLS) (E.D. Pa.), the Court dismisses without prejudice the claims in this complaint against Spitale and Fontno.")

"1. The Court's recent decision does not mention Emilie's right to her federally protected, pendant diagnosis PDD-NOS—a right that I share as her father as a result of her disability (Alexandra R. v. Brookline Sch. Dist., No. 06-cv-215-SM, 2007). The Infringement on Emilie's pendant diagnosis PDD-NOS is one of the plaintiff's core arguments. PDD-NOS is mentioned in paragraphs 5, 7, 8, 10, 12, 20, 25, 26 and 31 of the complaint. 14. That is, how does a County in Pennsylvania gain subject matter jurisdiction over me in New York when they are violating federal and State law, were informed of it, and made no effort to correct the breach? See Maestri v. Jutkofsky, 860 F.2d 50, 52-53 (2d Cir. 1988), Bradley v. Fisher, supra, at 351-52."

"15. We'll never know if Emilie could have maintained a job because the County and the District actively interfered with her employment potential by discriminating against Emilie's diagnosis of PDD-NOS." (e.g., they filed for disability support without registering false claim MR317 for which they were billing Medicaid with and after the State and Federal government paid $255,000 to make up for lost education via her PDD-NOS diagnosis.)

77. 04/22/2015: State Comptroller Thomas P. DiNapoli: $871 million in fraud had gone undetected by the NY MFCU since 2011. When the director of Northampton County MHMR, facilitated Emilie's false claim MR317 Northampton County judge's enforced payment for support for MR317 without ever registering it, thus concealing it. The Northampton County District Attorney John Morganelli as such was co-facilitating a fraudulent billing scheme and subsequently the trafficking of my daughter.

78. 04/22/2015: State Comptroller Thomas P. DiNapoli: "The NY Attorney General's Medicaid Fraud Control Unit (MFCU) that: "investigates and prosecutes individuals and companies responsible for improper or fraudulent billing schemes at the state level…New York County District Attorneys perform the same functions at the county level."

79. 04/23/2015: Then even more strange was assistant AG Peter Beauchamp's needless answer. Doc. 21. 04/23/2015 in rebuke of my "futile" MTR. "Here, Plaintiff's motion for reconsideration does nothing more than rehash issues previously raised at great length in Plaintiff's complaint, all of which were encompassed by the Court's dismissal order." Attorney Beauchamp's retort is factually incorrect as the merits of the case were circumvented in the dismissal order and highly

likely by design. I make this clear in my MTR. There cannot be an "encompassing" court dismissal order when it did not address the vast majority of causes of actions and facts.

80. When out-of-state frauds reach into New York to extract money from its citizens the case has to be heard in New York. It is where the injury took place.  Judge Preska's office continues to display strange, improper almost moronic logic when entertaining my cases. It is a violation of my rights and 42 U.S.C. § 1985 (2) (3).

81. The new discovery in regard to 15-cv-1755 demonstrates racketeering— facilitated by a judge, court, Northampton county MH/MR and individual clerks from the domestic relations division in Northampton County PA working in synchronization with New York Family Court to forward a false disability and interstate support claim. They concealed the enterprise's manufacture of false claim MR317 for which they were billing Medicaid and then caused a disability—seizures—they brought about via overdose and applied for interstate support after a documented prescription of an anti-convulsant was made 07/11/2014 .

82. Seizures—they caused an real disability preventing my daughters testimony for 14-cv-3804 and 14-2221 and subsequently Emilie's account of Northampton county court of common pleas participation in trafficking of her through Lehigh Transition Services).  See:  https://youtu.be/Wknw0S8X-eY  |  https://youtu.be/nIVxZKKJzdo

83. In the interim the City of New York, New York State, the Coalition for the Homeless have 100% access to my emails. ANY relationship I have tried to cultivate to maintain my business has been interfered with by them and the NYPD. These agencies have engaged in aggressive slander with literally anyone I make contact with: (a) making it impossible to find work (b) generate sales leads (c) or foster any kind of relationship management (d) be able to pay any of the fraudulent support payments both the City of New York and the State of New York have unlawfully held me accountable for. Subsequently resulting in the State freezing my bank account and revoking my driver's license.

84. It is by far the most corrupt low-brow moronic thing I have ever seen—after the attempted murder of my daughter. I will be interviewing "volunteers" in the near future so the court can understand who's been getting my emails their reaction to them, what they do with the information For example, a US trustee's email was mocked back at me a few hours after receiving it by a Coalition volunteer while standing at a soup kitchen for the Coalition.

85. I'll be weighing the caliber of their intelligence, mental problems which seem to be abundant —qualities of who my personal information is shared with. The end result has been my getting stalked, murder attempted through tampering with my bike, open hostility getting approached by lunatics muttering vile nonsense about my daughter (2016) offering to punch me out etc. I can point them out.

86. Illegal wiretap by the City of New York. I have not been charged with anything—nor have I done anything remotly wrong— much less anything of the magnitude to grant the Northampton County police, NYPD, officials, private entities to hack /monitor my emails and computer accounts indefinitely 24/7/360.

87. Moreover, New York City and New York State officials helped Northampton County Court of Common Pleas cover up the trafficking of my daughter by peddling their invented backstory. The evidence the Northampton County Court of Common Pleas has submitted to the City of New York and New York State has to be aired in a public forum e.g., the public has a right to know quality of bs these clowns peddled and the recipient stupidity by New York officials corrupt enough to give their moronic order the air of legitimacy and should be prepared to take public credit for accepting it on it face value and for never looking into Emilie's very real injureis by sadistic thugs in PA. The level of cowardice I have wittnesed thus far is stagering. Amy DeRaymond is an attempted murderer and was helped.

## VI. 2014 | CONCEALMENT OF A PUBLIC HEALTH HAZARD | 14-cv-9343

Norwegian Scabies | 49 U.S.C. § 5103 | Transportation of Hazardous Material | 49 CFR 173.134 - Class 6, Division 6.2. Infectious substance.

88. Lisa Spitale, Amy DeRaymond, and Lehigh Transition Services deliberate recklessness to my daughter Emilie's health endangered an interstate population with a potentially life-threatening pathogen. This was raised as part of 14-CV-9343 It was transferred out of the circuit and then "dismissed with prejudice" in the Third Circuit.

89. The hazard is an issue for New York: Amy DeRaymond and Lisa Spitale, Dr. Hernandez, DermOne and Lehigh Transition Services knowingly, deliberately propagated the spread of Norwegian scabies on my daughter Emilie after she contracted scabies via her trafficking maintained by Lisa Spitale, Lehigh Transition Services, Amy DeRaymond and then allowed the 49 CFR 173.134 - Class 6, Division 6.2. Infectious substance to travel intrestate.

(i) Category A: An infectious substance in a form capable of causing permanent disability or life-threatening or fatal disease in otherwise healthy humans or animals when exposure to it occurs.

49 CFR 173.134 - Class 6, Division 6.2. Infectious substance: "a material known to contain a pathogen such a bacteria, viruses, rickettsia, parasites, fungi, or poisons that can cause disease in humans or animals":

90. Norwegian (crusted) Scabies ICD-9-CM 133.0 an infectious and parasitic disease. "Norwegian Scabies is a rare and severely debilitating disease characterized by infestation of the skin with up to millions of Sarcoptes scabies mites" "Norwegian (crusted) scabies carries a high mortality, with deaths frequently occurring due to secondary sepsis"  However what one gets from contact is scbaies not Norwegian Scabies. For Norwegian Scabies to form it require an "otherwise healthy human" to have an immune defcencny. Those are in abudance in New York as the elderly and HIV afflected.

91. The law I am using pertains to materials however—even more so—Emilie carrying an undisclosed infectious substance capable of causing permanent disability or life-threatening or fatal disease in otherwise healthy humans must follow the same guidelines, precautions, and penalties for deliberately sending this type of pathogen into a densely populated area in its highly contagious form:

**http://www.sciencedirect.com/science/article/pii/S0196655305003202**
Did you think that it might be scabies? Identification of a case of Norwegian scabies on an acute care medical-surgical unit.

92. Pennsylvania guardians Lisa Spitale, Shannon Moore, and mother knowingly cultivated on Norwegian scabies on Emilie; allowed it to travel interstate into New York City every other weekend to my apartment in contact with me. They knew what it was (it is highly contagious) and could treat themselves with Permethrin. They isolated Emilie according to her with curtains in the house / her bedroom and cars. Lehigh Transition Services and Amy DeRaymond were containing fomites in the form dried skin flakes falling off Emilie giving Norwegian scabies its high degree of morbidity.

93. "for unknown reasons, Norwegian scabies is more common among immunosuppressive patients (e.g, those with HIV infection, hematologic cancer, chronic corticosteroid or other

immunosuppressant use), patients with severe physical disabilities or intellectual disability, and Australian Aborigines. Severity is related to the patient's immune status, not geography." http://www.merckmanuals.com/professional/dermatologic-disorders/parasitic-skin-infections/ scabies

https://www.ncbi.nlm.nih.gov/pmc/articles/PMC1117313/#B5
Norwegian scabies misdiagnosed as an adverse drug reaction
https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4530923/
http://cmr.asm.org/content/20/2/268.full
Postgraduate Medical Journal 2004: Dr James S McCarthy
http://www.ncbi.nlm.nih.gov/pubmed/18422789

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
HOUSING COURT 2014-2015


VII. 2015 |  FEDERAL QUESTION 16-429 |TAMPERING WITH OFFICE OF COURT ADMIN NWYK HOUSING COURT INFORMATION SYSTEM HISTORY OF PROCEEDINGS AND MAIL FRAUD  | NY County No. 79431-14  Majestic Realty Corp v. Thomas Kraemer

**A. 145 W 71 St. Apt 8G1 Ny Ny 10023 | 8G1 | Trafficking a rent stabilized tenant | 18 U.S. Code § 1592:**

94. Toxic fumes were first detected 05/18/2013 coming through my bedroom air conditioner. An infrared securtiy camera later captured an image of the landlord venting toxic fumes (1) (2) into the bedroom 02/19/2014.  The toxic fumes and insects were vented (3) (4) (5) (6) (7) (8) (9) (10) into my apartment 8G1 by my landlord. These occurred in conjunction with daughter's attempted murder starting May 1, 2013.  The NYPD/20 identified the venting of toxic fumes through my AC as assault and possibly attempted murder. They declined to investigate the day I reported it to them on or about 5/30/2013 and three times after that: 02/19/2014, 02/25/2014.

95. After my unlawful eviction 08/21/2015 HRA lost the City of New York's request #00035602756F for the regulated rent presented to HP Judge Wendt and unlawfully processed a OneShot without knowing the true rent.  The OneShot was then presented by HRA officials at MainChance who wanted to know if I "paid my rent".

96. The City of New York HRA unlawfully processed a OneShot without my knowledge or approval using an illegal rent as its basis then rejected me as a candidate on that basis. HRA ignored its previous mandate (#00035602756F) requiring the legal current rent be calculated as it would be illegal for the city to pay more than the legal rent. The City of New York HRA saw the DHCR records and knew the landlord was charging over 3 times the legally allowed rent.

97. A OneShot rejection required me to attended the City's back-to-work program to receive food stamps and shelter after my unlawful eviction. HRA repeatedly lost needed documentation that would help me:

(a) The City of New York HRA lost my income statements—at least twice.

(b) City of New York request for DHCR regulated rent of 8G1 Request #00035602756F was not in the HRA file.

(c) 12/16/2015 An HRA supervisor at Waverley center launched into a screaming, obstructionist freak out when I asked him to look for request no. #00035602756F and told him the name of the HRA employee Ed Keesley who drafted it. He lied about Mr. Keesley's employment with HRA. He then instructed security not to let me in anymore after asking for his name. Which he refused to provide. Security was dumbfounded and did nothing. They saw what I saw extremely odd unprofessional HRA supervisor

(d) I was evicted from MainChance and FoodStamps were canceled according to the City of New York HRA case worker at Waverly Center specifically because I did not show up for work at Grant and Associates.

**B. False Claim 79433-14 / Non-Pay Dwelling #27965: Tampering With Office Of Court Admin | Mail Fraud**

8.29.2014: My landlord filed a false claim State HP non-pay claim dwelling #27965 NY County L&T Index No. 974331-14 after I motioned 8.28.2014 for the US Appellate Court to intervene on my extortion and daughter's kidnapping (see 14-2221 Doc. 104-2). The kidnapping by my daughter's guardian Lisa Spitale of Pennsylvania had a ransom attached: move back to PA, drop my appeal 14-2221 against my New York landlord in exchange Lisa Spitale would have my daughter waiting at the bus stop in Easton when I arrived.

98. Lisa Spitale cut off communication with my daughter 8.23.2014. She and Amy DeRaymond overdosed Emilie on or about 08/27/2014 when I did not comply with their extortion demand.

12/18/2014: Housing Court Judge Hann confirmed the rent stabilization status of 8G1 after it came to light the landlord committed perjury on his non-pay claim dwelling #27965 NY County L&T Index No. 974331-14. Line item 7 was fraudulently stated: "The …premise is not subject to rent stabilization law…because when stabilized it became vacant and consistent with rent stabilization, was rented at legal regulated rent of at least $2,000

Judge Hann made the landlord go on record with the fraud, ordered settlement and trial for 2.5.2015 and noted it on the judges docket cover. See 15-CV-9838 Exhibit: B pg.16.

99.  Landlord filed a False Claim 79433-14
The landlord non-pay claim dwelling #27965 was a false claim in two ways:
1. I did not owe the landlord any money as she triple charged rent for 17 years. Overcharges are around $300,000 plus treble damages.  This was proved through DHCR records and two attorneys working for housing court one of whom stated I hit the lottery after viewing the DHCR records.
2. I caught the landlord in perjury via the submission non-pay claim dwelling #27965.  The entire claim was false from its impetuous.

100. Judge Wendt Openly Engaged in Theft.
(i)  2.5.2015 Judge Hann was replaced by Judged Wendt.

(ii) 2.5.2015: Judge Wendt ignored Judge Hann's 12/18/2014 order to settle.

(iii) 2.5.2015: Judge Wendt instead ordered I pay 5 months of illegal rent $14,736.40 as per RPAPL 745(2)(a). Judge Wendt's order violated RPAPL 745(2)(a) as I did not adjourn during 794331-14.

(iv) Judge Wendt's order RPAPL 745(2)(a) violated NYC/RSL/1969/Sec. 26-512(a)  as it enforced an illegal rent due in court escrow by 2.17.2015.

(vi) Judge Wendt knew he was violating NYC/RSL/1969/Sec. 26-512(a) to enforced an illegal rent as I added 8G1 /8G'S DHCR rent history to the docket prior to 2.5.2015. Judge Wendt read

parts of my rent overcharge motion aloud during 2.5.2015 and put off ruling on it until 3.23.2015 after his order to pay an illegal rent was due 2.17.2015.

**DHCR RECORD 313311**: Tenant | Elizabeth Eubank | 8G | Number of Rooms 3 | page 1 upper right Last rent was $686.15 on 7.31.1996 | page 3.

**DHCR RECORD 313312**: Tenant | Thomas Kraemer | 8G-1 | Number of Rooms N/A | page 1 upper right Rent started at $1,800.00 on 3.1.1997 | page 2.

(vii) Judge Wendt ignored the violations of warranty of habitability NYRPL § 235-b finding established by DHCR CM-410048-S dated 3.4.2014. HPD inspectors approved the landlords repairs 2.10.2014 yet DHCR was refusing to inspect 8G1 4 weeks later 3.4.2014 for safety reasons and then did nothing about it.

(a) Judge Wendt ignored New York Fire department 2.19.2014 EMT's incident report # 1-0432-0.
(b) 2.19.2014 EMT's refused to enter 8G1 due to their detection of toxic fumes emanating from 8G1.
(c)Judge Wendt ignored my exhibits (3) (4) (5) (6) (7) (8) (9) (10) that insects were vented into my apartment 8G1

101. Judges Tampered with Court Administration Facilitating Attorney Duval's Mail Fraud

**02/17/2015:** I presented to Judge Kaplan: City of New York No. 00035602756F request for the regulated rent of 8G1 to make judge Wendt. Judge Kaplan ordered me to see Judge Wendt 2.18.2015 and fraudulently updated the Court Administrative calendar with a hearing date of 2.26.2015.

**02/18/2015:** I saw Judge Wendt and he declined City of New York's No. 00035602756F request for the regulated rent and dated his order to DECLINE 02/17/2015, 02/19/2015:

**03/04/2015:** Attorney Christopher Duval working for the landlord filed a motion to evict me from 8G1 and the following tampering within the Court Administrative calendar resulted:
(i) Judge Kaplan's order for me to see Judge Wendt 02/18/2015 was altered so that I met with Judge Kaplan 02/17/2015;

(ii) the incorrect date added to the Admin for meeting with Judge Wendt 02/26/2015 was erased;
(iii) the 02/18/2015 the date I actually saw Judge Wendt and presented the City of New York's No. 00035602756F request for the regulated rent was never added to the court admin or Judge Wendt's appearance activity calendar;
(iv) and the 03/23/2015 scheduled hearing to review my overcharge claims was removed from the Court admin. A violation of 18 USC §1503. See 15-CV-9838 Exhibit B, pages 8-13.

(b) The 03/04/2015: Juxtaposition of removing, and adding false information to the Court Admin removed my 2.18.2015 appearance with City of New York request No. 00035602756F for the regulated rent of 8G1 to never have occurred in front of Judge Wendt. That is as far as the official court record was concerned I was never before Judge Wendt.  See 15-CV-9838 Exhibit B, page 13.

(c) Attorney Christopher Duval working for the landlord engaged mail fraud as per 18 U.S.C. §1341 and 4.6.2 U.S. Postal code, for the purpose of court service and legal correspondence in furtherance of theft of property worth over $1,000,000. Attorney Duval committed mail fraud after judges were switched from judge Hann to judge Wendt 02/05/2015 by court administration. Proof attorney Duval and landlord Florence Edelstein's could corruptly persuade court administration in violation of 18 USC §1503.

(d) Attorney Duval's method of mail fraud used an outdated meter for mailing legal correspondence that by federal law 4.6.2 US Postal code, required its return to the sender within 24 hours of its mailing. The fraud was activated by use of special privileges given to attorney's: their word in housing court was all that was needed for proof of service. When judge Wendt for example, asked an attorney using an outdated meter if he mailed service to a party the attorney can say YES knowing that his letter by US law cannot legally reach the party unless the U.S. Post misses it as they did in this case on 02/17/2015 and 03/23/2015:

**(e) Two of Attorney Duval's outdated metered letters were unlawfully delivered by US post:**

(i)  US ink jet date 02.17.2015 | Meter date 6.2.2014 | Prior eviction hearing 03.17.2015
(ii) US ink jet date 03.23.2015 | Meter date 6.2.2014 | Post  eviction hearing 03.17.2015.  See: https://youtu.be/hY8JY3B4yDo f

(f) Attorney Duval's motion to evict dated 3.2.2015 was not received by me. Attorney Duval's service to me—if sent by US mail—used an outdated meter and by law was required not to reach

me. 4.1.2015 Attorney Duval stated he put his 3.2.1015 motion in my mailbox—an impossibility in New York.  Attorney Duval's motion to evict dated 3.2.2015 was filed with the clerks desk 3.4.2015.

102. Corrupt persuasion of court staff a violation of 18 U.S.C. § 1503

Attorney Duval corruptly persuaded two housing court judge's: Wendt, Kaplan, unknown individuals, and judges working for housing court administration who caused the Office of Court Admin NWYK Housing Court Information System History Of Proceedings to be altered in connection with Duval's mail fraud scheme ON 3.4.2015—the same day as his motion to evict filing and the same day he used an outdated meter in violation U.S. Postal Code 4.6.2 to mail service of his motion that could not legally be delivered by the U.S. Post Office.

103. 02/18/2015 hearing in front of Judge Wendt presenting the City of New York's request for the DHCR regulated rent no. No. 00035602756F is no where to be found. (1) It was never entered into the system.

104. Attorney Duval's and the Court's scheme to defraud was the theft of my property: (i) My non-appearance for a 3.17.2015 hearing due to the mail fraud causing my subsequent eviction; (ii) the court making that possible by removing my presentation the City of New York's request for the true legal rent of 8G1 presented to Judge Wendt 2.18.2015 from the court admin. Those maintaining the Court Admin removed any indication of the City's presentation to the court the same day as Duval's motion to evict 3.2.2014 was added to the Court Admin 3.2.2014.

105. 3.17.2014 Judge Wendt removed the hearing date 3.23.2015 for my counterclaim [it was already removed from the court admin 3.4.2015 the day Duval filed his 3.2.2015 motion] of rent overcharges worth more than $900,000 and expenses worth more than $100,000 and evicted me for not paying his unlawful order demanding an illegal rent under RPAPL §745 (2) (a).

106. "[T]he purpose of the scheme 'must be to injure, which doubtless may be inferred when the scheme has such effect as a necessary result of carrying it out."

107. Quoting United States v. Regent Office Supply Co., 421 F.2d 1174, 1180-81 (2d Cir. 1970) "Whoever . . . corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be (guilty of an offense)". United States v. Cioffi, 493 F.2d 1111 (2d Cir.), cert. denied, 419 U.S. 417 (1974) 10. The offense of mail fraud demands proof of a

scheme to defraud which, at some point, is intentionally furthered by use of the mails." United States v. Schmuck, 489 U.S. 705, 710 (1989) (quoting Kann v. United States, 323 U.S. 88, 95 (1944)); accord United States v. Coachman, 727 F.2d 1293, 1302 n. 43 (D.C. Cir. 1984), 39 F.3d 1249, 1257 (2d Cir. 1994) "The Government may prove a conspiracy by circumstantial evidence that the defendants acted together in furtherance of a common goal." "The agreement may be inferred from the [defendants'] acts pursuant to the fraudulent scheme or other circumstantial evidence." United States v. Dunn, 564 F.2d 348, 357 (9th Cir.1977).

108. Listing of Violations | 145 W 71 St. Apt. 8G1.

**03/04/2014:** NYRPL § 235-b warranty of habitability violation confirmed:

**03/04/2014:** DHCR CM-410048-S inspector Barbara Robinson. Ms. Robinson's supervisor decided 145 West 71ST APT 8G1 NY, NY was too dangerous to be inspected by inspector Robinson and stopped the inspection 15 minutes prior to the scheduled appointment.
1. No new appointment was made.
2. No obligatory order of rent reduction was made.
3. I stopped paying rent from 03/04/2014 forward.

**01/08/2014:**  HPD Inspection. No. 6294/13  | 145 W 71 St. Apt 8G1.
B-class violation: Replace floor. Order no. 502.
01/09/2014: Emilie allegedly was assaulted on or about this date—contacted federal guardian Moore about Lehigh Transition Service and Emilie needing to see a doctor Monday 01/13/2014.

**11/18/2014:** HPD Inspection. No. 1721/14  | 145 W 71 St. Apt 8G1.
C-class violation: Order no. 598 | "Disconnected South Radiator" The Steam pipe was pulled from the radiator by the landlord and vented raw steam in 8G1 destroying the tenant's property
C-class violation: Mold. Order no. 550

**08/29/2014:** False Claim 31 U.S.C. §§ 3729–3733:  Non-payment dwelling claim #27965. [non pay case HP 79433-14]
(i) The landlord filed a false claim in a lower court while landlord was still a defendant for Federal appeal 14-2221.
(ii) The landlord falsely claimed that I owed $14,624.04 in back rent when the landlord owed the tenant over $300,000 for charging three times the legally allowed rent form 1997 forward.

(iii) The landlords non-payment dwelling claim #27965 falsely claimed apartment 8G1 was no longer the subject of rent stabilization to the court.  "If a landlord falsely claims that an apartment is not rent-stabilized, it is grounds for dismissal of an eviction case."

(vi) 12/18/2014 housing Judge Hann recognized the false claim, put landlord's false claim on record and ordered settlement for 2.5.2015.

(v) 2.5.2015 Judge Wendt circumvented Judge Hann's 12/18/2014 false claim finding and resulting order.

(iv) 14-cv-3804 Judge Preska circumvented judge Hann's false claim finding and resulting order.

(iiv) 16-429 US Court of Appeals circumvented judge Hann's false claim finding and resulting order.

(iiiv) J-51 tax benefits placed the building 145 West 71 St under rent regulation. As such the landlord is a federal fund recipient.

(xi) DHCR registered 8G, 8G1 as rent stabilized:

## DHCR RECORD  313311:

Tenant | Elizabeth Eubank | 8G | Number of Rooms 3 | page 1 upper right
Last rent was $686.15 on 7.31.1996 | page 3.

## DHCR RECORD  313312:

Tenant  | Thomas Kraemer | 8G-1 | Number of Rooms N/A | page 1 upper right
Rent started at $1,800.00 on 3.1.1997 | page 2.

109.  Landlord Filed A False Claim To Receive J51 Tax Breaks

The landlord took advantage of United States / NY State tax breaks through fraudulent reporting and submission of DHCR documents—knowingly making false claims that fraudulently entitled the landlord to those benefits—cheating NY State and the United States.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

110. **Rent Overcharge  | 145 West 71 Apt. 8G1. Ny, Ny**

Landlord Florence Edelstein simply de-listed the number of rooms from the DHCR registration and changed the name of the apartment from 8G to 8G1 and then tripled the legally allowed rent. No changes were made to the apartment prior to my moving in. A wilful scheme to defraud.

NYC Department of Buildings show only one permit issued from 1996-1997 the year the last tenant moved out and I in moved in. [Job No: 101075649 Permit No: 101075649-01-AL]  It cites a kitchen in PH 2 and 5. There was no work listed for the eighth floor.

http://a810-bisweb.nyc.gov/bisweb/WorkPermitDataServlet?
requestid=4&allisn=0000670611&allbin=1029879

**08/28/2014:** Majestic Realty's false claim: Non-payment dwelling claim #27965 was fraudulent.
Case # 79433-14:

"7. The premises is not subject to City Rent Law (Rent Control) as it no longer subject to Rent
Stabilization Law of 1969, as amended, because when stabilized, it became vacant and consistent
with Rent Stabilization was rented at a legal regulated rent of at least $2,000 per month."
Secondly—more importantly, his claim #27965 was false because the landlord owed me for 17
years of rent overcharges totaling over $300,000.

**"If a landlord falsely claims that an apartment is not rent-stabilized, it is grounds for
dismissal of an eviction case."**

**08/28/2014**: The landlord's willful scheme to defraud the tenant (myself) was compounded by
the submission of a false claim: Non-payment dwelling claim #27965 using another willful
scheme to defraud in an attempt to hide the previous willful scheme to defraud. The landlord
owed the tenant over $300,000 for 17 years of illegal over charges she willfully schemed to
defraud the tenant from the inception of the original lease 1997 and again 17 years later when
submitting  fraudulent non-payment for a dwelling #27965.

As such treble damages applied bring the total owed to the tenant by the landlord to more than
$900,000.

111.  Toxic Fumes reported to NYPD 145 West 71 Street Apartment 8G1:
05/25/2013: On or about 05/25/2013 I went to the Upper West Side NYPD 20th Precinct to
report toxic fumes vented into my bedroom through—what I believed at the time to be from the
air conditioner while I was sleeping.  The sergeant stated it would definitely be assault and may
be attempted murder. A lieutenant appeared and they concurred it could be considered attempted
murder. I asked about an investigation and the answer was come back and see us if the landlord
does it again. No investigation.

**05/25/2013**: On or about 05/25/2013 I went to the Upper West Side NYPD 20th Precinct to
report toxic fumes vented into my bedroom through—what I believed at the time to be from the
air conditioner while I was sleeping.  The sergeant stated it was assault and may be attempted
murder. A lieutenant appeared and they concurred it could be considered attempted murder. I

asked about an investigation and the answer was come back and see us if the landlord does it again. The landlord did try it again many times and apparently had license to do so from the police.

**02/02/2014**: I (the tenant) installed two Dropcams in the living room of 8G1. The landlord was venting toxic fumes again after HPD 6294/13 repairs were made 02/10/2014. The fumes prevented me from moving back into 8G1. Anytime I entered the apartment the landlord would vent toxic fumes until I became sick, cramp up and had to leave.

**02/17/2014**: On or about 02/17/2014 I went to the NYPD/20 again. They did not investigate and suggested I call the fire department the next time it happened. No investigation.

112. I visited the NYPD/20 a third time. I met with a detective and he told me the same thing— come back if it happens again and they would consider taking action—he gave me a carbon copy of his report. No investigation.

My fourth visit to NYPD/20 the officer insisted my visit with the detective did not exist— implied I was imagining things. No investigation.

113. Proof of Toxic Fumes Vented into Bedroom By Landlord
As it turned out I had undiscovered proof and by way of this submission dated 03/27/2017 please find photographic proof of fumes vented into my apartment.  Please see the following page.

**02/18/2014**: |11:34 PM I purchased and installed one additional, [a third] DropCam for the bedroom. [Amex, Apple store $326.52] Six and half hours later 02/19/2014 the infrared camera caught the landlord venting toxic fumes into my bedroom at 6:12 AM. (See photo to the top left) I have requested the movie from the manufacturer to confirm— they have not cooperated in producing the video footage.

**02/19/2014**: | 1:29 PM | Fumes continued throughout the morning until I called 311/ fire department 1:29 PM. [ATT 01:29p Non_Em CL 000-000-0311] EMT's later confirmed (NYFD incident #1-0432-0) 8G1 exclusively had toxic fumes emanating from it and refused to enter 8G1 due to the fumes.  The fumes smelled like a combination of fuel oil and pesticides.

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

7. Require owner Florence Edelstein, of 2207 Coney Island A venue, Brooklyn, NY 11223 (718) 627-2980 to immediately pay for my hotel accommodations until my apartment can be returned and HPD part make the landlord fit apartment 8G1 to my specifications to make it tamper proof. Including the prevention of venting fumes in to 8G1.

8. Treble damages as allowed via Thornton v. Baron and Grimm v. DHCR due to the landlord's willful scheme to defraud and violations of 18 U.S.C. §1341, 18 U.S.C. §1503, 18 U.S.C. §1958, RPAPL § 853, NYRPL § 235-b.

9. Any punitive damages the court finds appropriate as the violations proved here are criminal or quasi criminal in nature.

Thomas Kraemer  04/03/2017

CC:
United States Attorney's Office
1 St. Andrew's Plaza
New York City, NY 10007
Fax: 212.637.2750


Marie A. O'Rourke
Victims' Rights Ombudsman
Executive Office for United States Attorneys
Department of Justice
RFK Main Justice Building
950 Pennsylvania Ave., N.W. Room 2261
Washington, DC 20530-0001
Fax: (202) 252-1011


Wendy.Olsen@usdoj.gov
United States Attorney's Office
1 St. Andrew's Plaza
New York City, NY 10007
Fax: 212.637.2750


William Bristow

Office of The Attorney General State of New York

Litigation Bureau

120 Broadway

24th Floor

New York, NY 10271.